[Civ. No. 7816. Second Appellate District, Division Two.—June 23, 1933.]

SHIGERU HAYASHIDA, Appellant, v. TSUNEHACHI KAKIMOTO et al., Respondents.

744

Coleman E. Stewart for Appellant.

Schauer, Ryon & Goux for Respondents.

ARCHBALD, J., *pro tem.*—A demurrer to plaintiff's second amended complaint for damages for alleged malicious prosecution was sustained without leave to amend. From the judgment entered thereafter plaintiff has appealed.

The complaint alleges in substance that defendants, "by sending" letters dated April 1, 1930, and April 27, 1930, and a telegram dated April 28, 1930, to the "Board of Special Inquiry of the United States Department of Labor, Bureau of Immigration", "the contents of each being unknown to plaintiff, instigated and procured the detention of plaintiff by the Board of Special Inquiry of the United States Department of Labor, Bureau of Immigration, on the charge of being an alien who was likely to become a public charge"; that plaintiff was "imprisoned on said charge" from April 28, 1930, to May 26, 1930, in the immigration detention ward at San Pedro, California; that in so doing defendants acted maliciously and without probable cause;

that on May 26, 1930, said Department of Labor, Bureau of Immigration, dismissed said charge and released plaintiff from custody. The demurrer was both general and special. Among the grounds of the latter were ambiguity and uncertainty in that it could not be ascertained from the complaint with what, if any, judicial body defendants filed any charge; whether there was a hearing before the original body before which said charges were filed and what the outcome of said hearing was, and whether the dismissal alleged was a dismissal on appeal of a decision of the original body or by the original body itself; what action or means were used to obtain the arrest of plaintiff or the nature of such action, whether civil or criminal, or in what judicial tribunal, if any, the charges were filed.

It is apparent that the general demurrer was sustained without leave to amend for the reason that the trial court adopted the contention that the proceeding alleged to have been instigated by defendants was not shown to be a "legal proceeding", and the special board of inquiry referred to was not shown to have been exercising judicial functions.

The action for malicious prosecution is a remedy that has come down to us from the common law. It undoubtedly grew out of the malicious use of the courts for the purpose of vexation or injury and not for the *bona fide* prosecution of a civil or criminal cause. As was said in the case of *Wass* v. *Stephens,* 128 N. Y. 123 [28 N. E. 21]: "The action for malicious prosecution is very ancient. The law puts no direct restraint upon the institution by one person of a civil action or a criminal prosecution against another. He may put in motion the civil or criminal law, at his pleasure, for the enforcement of an alleged private right, or the punishment of an alleged public wrong; but if he acts from malice and institutes a groundless prosecution against another, either civil or criminal, the law affords to the injured party a remedy through an action for damages for malicious prosecution." ■ Such action may be defined as one brought for the recovery of damages caused by "a judicial proceeding instituted by one person against another from wrongful or improper motives, and without probable cause to sustain it" (*Hicks* v. *Brantley,* 102 Ga. 264, 268 [29 S. E. 459]). The wrong to be righted must be based on *a judicial proceeding.* The

gist of the action "is the putting of *legal process* in force, regularly, for the mere purpose of vexation or injury; and the inconvenience or harm resulting, naturally or directly, from the suit or prosecution, is the legal damage upon which it [the action] is founded" (*Cooper* v. *Armour,* 42 Fed. 215 [8 L. R. A. 47]). Such action can only be supported by showing a malicious prosecution of some legal proceeding, before some judicial officer or tribunal, and if the proceedings complained of are extrajudicial the remedy is trespass and not an action on the case. (*Turpin* v. *Remy,* 3 Blackf. (Ind.) 210, 216.)

The complaint in such an action must affirmatively show a judicial proceeding instituted by defendant. In the case of *Maskell* v. *Barker,* 99 Cal. 642 [34 Pac. 340], the complaint alleged only that defendant "maliciously and without probable cause sued out a writ of attachment against plaintiff's property and extorted from him the money sued for, upon a threat made by defendant that if the same was not paid he would cause the writ to be levied on certain real property" of plaintiff which the latter was about to sell, and thus prevent the sale. It was held that the general demurrer was properly sustained because it was incumbent upon plaintiff "to allege and prove that the writ of attachment was executed by attaching his property". In other words, it was necessary to allege that the damage was done in and by the judicial proceeding, and not merely by threat of it.

Section 3 of the Act of February 5, 1917 (39 Stats. at Large, 875, sec. 136; 44 Stats. at Large, part I, p. 131), excludes from admission into the United States certain classes of aliens, among which are "persons likely to become a public charge". Section 15 of such act (39 Stats. at Large, 885, sec. 151; 44 Stats. at Large, 137) makes it the duty of the proper immigration officer at any port of entry, upon the arrival of a vessel bearing aliens, to inspect such aliens, and provides that such immigration officials "may order a temporary removal of such aliens for examination at a designated time and place", such removal not to be considered a landing. Section .11 of the act (39 Stats. at Large, 881, sec. 147; 44 Stats. at Large, part I, p. 135) provides that for the purpose of determining whether aliens arriving at ports of the United States

belong to any of the excluded classes *the commissioner-general of immigration, with the approval of the secretary of labor, may direct that said aliens shall be detained* on board the vessel bringing them, or in a United States immigrant station at the expense of such vessel, a sufficient time to enable the immigration and medical officers to make an examination sufficient to determine whether or not they belong to the excluded classes. Section 17 (39 Stats. at Large, 887, sec. 153; 44 Stats. at Large, part I, p. 138) provides for the appointment by the commissioner of immigration or inspector in charge at the various ports of arrival of "such boards of special inquiry . . . as may be necessary for the prompt determination of cases of immigrants *detained* at such ports under the provisions of law". (Italics ours.) Each such board is to consist of three members "who shall be selected from such of the immigrant officials in the service as the Commissioner-General of Immigration, with the approval of the Secretary of Commerce and Labor, shall from time to time designate as qualified to serve on such boards". Such boards "shall have authority to determine whether an alien *who has been duly held* shall be allowed to land or shall be deported". (Italics ours). The hearings of the board are private and a record is kept of the proceedings and testimony produced before it. The decision of two members prevails, but either the alien or dissenting member may appeal to the secretary of commerce and labor and such appeal operates to stay any action in regard to the final disposal of the alien in question until the receipt by the commissioner of immigration at the port of arrival of the decision on appeal. The decision of such board is final "unless reversed on appeal to such secretary".

It will be seen from the foregoing that in determining whether an alien is entitled to admission into the United States the immigration authorities are acting in an administrative and not in a judicial capacity, and such is the holding of the federal courts. (*United States ex rel. Mylius* v. *Uhl*, 210 Fed. 860, 862.) Appellant herein admits that the board of special inquiry is not a court or judicial body, but urges that the test is not whether or not it is such a court or body but whether it performs a judicial function.

748

The case of *Cosulich* v. *Stempel,* 81 Cal. App. 278 [253 Pac. 344, 345], seems to us to be applicable here in principle. In that case the *action* charged to have been maliciously prosecuted was the *act* of defendant in filing an affidavit accusing the plaintiff of dishonesty and misconduct, in opposition to plaintiff's application for a license as a real estate broker, which charge, the complaint alleged, was without probable cause and resulted in delaying the issuance of said license. The court there said, the italics being ours: "The general rule is that the action will lie only when a party has instituted or prosecuted with malice and without reasonable or probable cause *some judicial proceeding* against another," and that the authorities are in accord "that they *must be judicial proceedings* and *brought before some judicial tribunal".* It was argued in that case, as here, that because the commissioner was acting *quasi*-judicially with jurisdiction to entertain proceedings of a judicial character, the action was a "judicial proceeding" within the rule applicable to malicious prosecutions. With respect to such contention the court observed that the complaint merely showed that plaintiff had applied to the commissioner for a license, and that though that officer delayed action because of defendant's affidavit until he satisfied himself that the applicant was a suitable person to be awarded a license, there were no proceedings of a judicial nature either instituted or determined. The court necessarily refused to decide whether or not if the proceeding had been one for revocation of a license already issued it would have been a judicial proceeding.

The case as alleged by plaintiff's complaint is that of an alien presenting himself at a port of entry into the United States for admission into the country. The function of the board of inquiry does not appear to be that of initiating detention but to inquire into cases where the alien is detained for examination before such board. Under the law, as we read it, we fail to see how there could have been any detention by the board of special inquiry. The detention is made by the commissioner-general of immigration, and the authority of the board is to determine whether an alien *"who has been duly held* shall be allowed to land or shall be deported".* On the face of the complaint, in the light of the law, the statement that defend-

ants, by sending the letters and telegram "instigated and procured the detention of this plaintiff by the Board of Special Inquiry" is an erroneous conclusion, and the complaint on its face, with the law applied to it, shows but a detention and administrative investigation instituted by the department whose duty it was so to do. If the complaint showed that such letters and telegram had been sent to the commissioner-general of immigration or the secretary of labor; that the alien was in possession of papers showing that he had formerly entered the United States and had the right to return; that the actions of defendants caused the commissioner-general to make such detention and that the real issue before the board of special inquiry was the right to enter under the papers held by the alien, appellant would be in a better position to urge that the board performed a judicial function in the instant case. On the facts alleged, however, we are of the opinion that the complaint fails to show that the board of special inquiry performed anything more than an administrative function, even assuming that something more than a conclusion is alleged in the statement that by sending letters and a telegram, the contents of which are not shown, the detention was caused and the investigation instigated.

Appellant urges that even though he is mistaken in the theory adopted for the redress of a wrong done him it is the duty of the court to indicate the correct theory if it can be stated with "slight amendment". The difficulty is that appellant made no attempt to amend but insisted in standing on his complaint; and as we are of the opinion that both general and special demurrers were properly sustained, the order of the trial court in that respect must be affirmed on appeal. (*Haddad* v. *McDowell*, 213 Cal. 690 [3 Pac. (2d) 550].)

Judgment affirmed.

Craig, Acting P. J., and Stephens, J., concurred.