[Civ. No. 15548. First Dist., Div. One. Nov. 25, 1953.]

J. VARGAS, Respondent, v. VINCENZO GIACOSA et al., Defendants; MARIO GIACOSA et al., Appellants.

Sullivan, Roche, Johnson & Farraher for Appellants.

H. W. Glensor and Theodore M. Monell for Respondent.

WOOD (Fred B.), J.—From August 10, 1949, until December 7, 1950, plaintiff rented and occupied a flat owned by Edward and Mario Giacosa.

In July, 1950, he filed his complaint herein against Edward, Mario, Vincenzo and Pasqualina Giacosa* for damages sustained by him, alleging four causes of action separately stated in as many counts. By a supplemental complaint he alleged additional causes of action.

In the first count plaintiff alleged that the defendants, for the purpose of harassing, annoying and injuring plaintiff and his family, conspired to and did commit the following overt acts: (1) defendants collected $256 in excess of the lawful rent fixed by the Housing Expeditor; (2) refused to give receipts for rent paid; (3) through Pasqualina, said to plaintiff, "You are bad people, get out, I don't want you in here"; (4) through Mario, said, "Get out, you are not going to be there to pay any rent. You are going to get out"; (5) through Edward, said, "I am your real landlord. You people are going to get out"; (6) for the sole purpose of compelling plaintiff to pay more than the lawful rent, filed two petitions with the Housing Expeditor requesting authority to evict plaintiff, both of which petitions were denied; (7) maliciously and without cause filed an unlawful detainer action, obtaining a default judgment upon a false affidavit of service, which judgment was set aside and the action later dismissed; (8) turned off plaintiff's water supply for a period of 29 hours. On this count the jury awarded $2,500 actual damages against Edward and Mario jointly and $1,250 punitive damages against each of them separately; no recovery from Pasqualina. (Vincenzo had been granted a nonsuit.)

In the second count he alleged rent overcharges (overt act No. 1 of the first count), for which the jury awarded $48 against Edward and Mario.

In the third count he alleged damages for malicious prosecution, the filing and prosecution of an unlawful detainer action (overt act No. 7 of the first count), for which the jury awarded $500 actual and $100 exemplary damages against Edward. (Nonsuit had been granted as to the other defendants.)

In the fourth count he alleged a wilful and malicious turning off of the water supply for the flat occupied by him (overt

*Vincenzo and Pasqualina are husband and wife, the parents of Edward and Mario.

act No. 8 of the first count). The court granted each of the defendants a nonsuit on the fourth count.

In the supplemental complaint he alleged two causes of action for the shutting off of the water supply at a later date, the first cause was described as a conspiracy, the second not. On the second cause all the defendants were granted a nonsuit.

Edward and Mario have appealed from the judgment. In support of their appeal, they claim that the verdicts are against law and not supported by the evidence, errors of law were committed during the trial, erroneous instructions were given the jury, and the verdicts are excessive and appear to have been awarded under the influence of passion and prejudice.

### 1. THE VERDICT ON THE FIRST COUNT, DAMAGES FOR THE ALLEGED CIVIL CONSPIRACY

"It is well settled that a conspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give a right of action. The damage is the gist of the action, not the conspiracy. [Citations.] It is the wrong done and the damage suffered pursuant to the conspiracy which is the cause of action, rather than the conspiracy itself. [Citation.]" (*Wallace* v. *Kerr*, 42 Cal.App.2d 182, 184-185 [108 P.2d 754].) "As the cause of action is for the damage suffered and not the mere conspiracy, the complaint must state facts which show that a civil wrong was done resulting in damages." (*Orloff* v. *Metropolitan Trust Co.*, 17 Cal.2d 484, 488 [110 P.2d 396].) "In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." (*Mox, Inc.* v. *Woods*, 202 Cal. 675, 677-678 [262 P. 302].) An "evil motive which may inspire the doing of an act not unlawful will not of itself make the act unlawful." (*Union Labor Hospital Assn.* v. *Vance Redwood Lbr. Co.*, 158 Cal. 551, 554 [112 P. 886, 33 L.R.A.N.S. 1034].)*

---

*Plaintiff, as authority for his theory that lawful acts become actionable if two or more persons conspire to commit them, mistakenly relies upon a statement in *Swift & Co.* v. *United States*, 196 U.S. 375, 396 [25 S.Ct. 276, 49 L.Ed. 518], concerning various acts charged: ". . . whatever we may think of them separately when we take them up as distinct charges, they are alleged sufficiently as elements of the scheme. It is suggested that the several acts charged are lawful and that intent can make no difference. But they are bound together as the parts of a

In our case eight overt acts are alleged as actionable wrongs in the first count, the civil conspiracy. Damages for the commission of four of these overt acts could not properly be included in the verdict on this count. The verdicts on the second and third counts covered damages for overt act No. 1, the rental overcharge, and overt act No. 7, malicious prosecution. There was a failure of proof as to commission by the defendants of overt act No. 8, the shutting off of the water supply, demonstrated by the nonsuit on the fourth count, which is supported by the evidence and the failure of plaintiff to appeal. ■ Exoneration of Pasqualina on the first count exonerated her alleged coconspirators from liability in respect to the words uttered by her, overt act No. 3. If the *actor* is not liable, there is no basis for holding his or her alleged coconspirators liable; a principle implicit, though not precisely so expressed, in *Horowitz* v. *Sacks*, 89 Cal.App. 336, 341 [265 P. 281], and *Perna* v. *Bank of America*, 28 Cal.App.2d 372, 377-378 [82 P.2d 605].

The parties agree that since the jury returned a verdict on the malicious prosecution count it should be presumed that they excluded that item from consideration when assessing damages on the conspiracy count. Defendants claim the same is true of the rental overcharge item and plaintiff does not expressly challenge that claim. It seems reasonable to entertain such a presumption as to all four of these items if the record does not indicate the likelihood of a different intent on the part of the jury.

This leaves four overt acts for consideration as bases for damages under the conspiracy count. Two of them (overt acts 4 and 5) are but words uttered by Mario and by Edward. What legal injury did the utterance of these words inflict? According to the complaint, as a result of defendants' course of conduct "plaintiff became worried as to the housing of himself and family, became nervous, sick, sore and disordered to his damage . . ." There was no physical impact. There was, at most, a shock, through the senses, to plaintiff's nervous system. Was there here such a shock, so given, as might furnish a legal basis for compensatory relief to plaintiff for the consequences which he claims he suffered?

single plan. The plan may make the parts unlawful." That statement must be read in its context, the discussion of the sufficiency of a complaint to enjoin the violation of the federal Anti-Trust Act of 1890 (26 Stats. 209; 15 U.S.C.A. 1-7) which *expressly proscribed* every combination or *conspiracy* in restraint of trade among the states or with foreign nations.

"It cannot be overemphasized that the human body can through negligence of others suffer injury in only two ways: (1) by physical impact, and (2) by shock, through the senses, to the nervous system. A person can suffer both at the same time or he can experience one alone. In either event, actionable mental suffering may result. But merely because a shock to the nervous system is an injury to the body rather than to the mind (*Easton* v. *United Trade School Contracting Co.*, 173 Cal. 199, 203 [159 P. 597, L.R.A. 1917A 394]), it does not necessarily follow that every mental disturbance is caused by a shock to the nervous system." (*Espinosa* v. *Beverly Hospital*, 114 Cal.App.2d 232, 234 [249 P.2d 843].) "If the actor intentionally and unreasonably subjects another to emotional distress which he should recognize as likely to result in illness or other bodily harm, he is subject to liability to the other for an illness or other bodily harm of which the distress is a legal cause, (a) although the actor has no intention of inflicting such harm, and (b) irrespective of whether the act is directed against the other or a third person." (§ 312 Rest. Law of Torts.) "The important elements are that the act is intentional, that it is unreasonable, and that the actor should recognize it as likely to result in illness. Given these elements the modern cases recognize that mere words, oral or written, which result in physical injury to another are actionable. [Citations.]" (*Bowden* v. *Spiegel, Inc.*, 96 Cal.App.2d 793, 795 [216 P.2d 571].)

In the instant case, were the words uttered under such circumstances as to make them actionable? We think not.

The words described as overt act No. 4 were uttered to plaintiff's wife during a discussion between her and Mario, concerning his delay in repairing leaks in the roof of the rented premises. Plaintiff was not present. Mrs. Vargas does not say or indicate that the utterances of those words frightened or shocked her. Neither she nor plaintiff mentions this utterance as a shock to him or as a cause of his nervousness. She did say that "every time he got a notice like that [a notice in the unlawful detainer action] he got very nervous and was at times unable to work." Further as to the effect of the notice, she said "he was terrible nervous, and he suffered with arthritis before, and after all this trouble it all came back." Plaintiff testified he had suffered from arthritis since 1926; his health condition was pretty good prior to August, 1949; then there was a change (nervousness, dizziness, and pains in hands, knees and neck) starting the

first month he paid the rent and did not get a receipt. He did not consult a doctor until November, 1950. The doctor described plaintiff's condition as of that date and expressed the opinion that plaintiff's condition was aggravated by nervous excitement but the doctor did not know the cause of plaintiff's nervousness. This evidence falls short of showing that Mario, by the words he addressed to Mrs. Vargas, injured plaintiff by shock, through the senses, to his nervous system.

Moreover, we see no basis for an inference that Mario should have recognized that the uttering of those words, under the circumstances described, would likely result in illness or bodily harm to anyone.

About an hour after this incident, Mario brought Edward to plaintiff's flat. They went into the kitchen, looked it over, and Edward said, " 'Oh, this is nothing.' He said 'This is nothing. Anyhow, you don't need it fixed. You are going to get out, you are going to get out.' And he just went down the stairway, repeating that over and over.'' (Overt act No. 5.) Plaintiff overheard those words but had no conversation with Edward. He said he just saw Edward come into the flat and walk out. He never met Edward in his life. Nor did plaintiff say or indicate that this utterance by Edward shocked him, frightened him or put him in any fear. And we see no basis for an inference that Edward should have foreseen the likelihood of resultant illness or bodily harm to anyone.

We conclude that overt acts 4 and 5 did not involve the commisson of an actionable wrong.

Overt act No. 6, the filing by Edward of two petitions with the Housing Expeditor for authority to evict plaintiff, did not furnish the basis for a cause of action in plaintiff's favor. It was done in the exercise of a right given Edward by statute. Even if it were done with malice and without probable cause (which we need not and do not decide) it did not institute such a proceeding as could constitute malicious prosecution. It did not invoke the exercise by the Housing Expeditor of a judicial function within the meaning of that term as used in the legal concept of malicious prosecution. ▮▮ Malicious prosecution is defined as the institution and maintenance of "judicial proceedings" against another with malice and without probable cause. (16 Cal.Jur. 728, Malicious Prosecution, § 2.) Thus, the sending of letters and telegrams to a board of special inquiry of the federal Bureau of Immigration,

which caused the detention of an alien for a period of time as a person likely to become a public charge, was not "malicious prosecution" because the bureau in making such an inquiry and determination was "acting in an administrative and not in a judicial capacity." (*Hayashida* v. *Kakimoto*, 132 Cal. App. 743, 747 [23 P.2d 311].) This does not mean that no proceeding before an administrative body, instituted with malice and without probable cause, could constitute malicious prosecution. It means simply that a proceeding which merely invokes the exercise of administrative, not judicial powers (such as a landlord's petition to a Housing Expeditor for permission to terminate a tenancy) is not a "judicial proceeding."

 The sole remaining overt act is the refusal of defendants to give receipts for rental paid. Just how such a refusal, in the circumstances under which made, could cause plaintiff mental shock and ensuing physical illness or upon what basis defendants could be charged with foreseeing such a result, we do not perceive. Plaintiff narrated at some length a *friendly* conversation he had with Mario in October, 1949, culminating in a reduction of the rental from $30 to $20 a month, plaintiff agreeing not to tell the other tenants in the building because, as Mario told him, they were paying more. How, under those circumstances, the aggravation of plaintiff's arthritic condition could be deemed a legally actionable consequence of the landlords' refusal to give rent receipts, we do not perceive. In addition, commencing a few months later and continuing throughout the remainder of his tenancy, plaintiff did obtain receipts, paying the rent by money order or by check. We see no legal basis for the assessment of damages for the commission of overt act No. 6.

The verdict on the first count of the complaint is not sustained by the evidence.

In view of this conclusion we perhaps need not consider defendants' other points in respect to this count. However, an instruction given at plaintiff's request told the jury that if they found that the defendants or some of them owned or had possession of the premises and rented them to plaintiff for occupation as a housing accommodation and agreed to furnish water and thereafter shut off the water, that such shutting off "is an interference with the use and occupation of said property and in effect amounts to a constructive eviction therefrom." This was erroneous because eviction was not an issue under the pleadings and, in fact,

plaintiff continued in possession and paid rent after the temporary shut-off; there was no evidence that any defendant shut the water off; the court had properly granted a nonsuit on the substantive count and plaintiff has confirmed that ruling by his failure to appeal. Although plaintiff argues that this instruction "does not tell the jury that damages may be awarded or that they can consider shutting off the water in arriving at the amount of the verdict," they were potentially misled into believing they could properly assess damages therefor as the legal consequence of one of the overt acts alleged in the first count. Whether they did or not, we do not know. Whether they did or not, the net result is the same, insufficiency of evidence to support the verdict on the first count.

## 2. THE VERDICT ON THE SECOND COUNT, THE RENTAL OVERCHARGE

Defendants appealed from the whole of the judgment but in their opening brief describe this as an appeal from a judgment entered on the first and third counts of the complaint, thus inferentially excluding consideration of the second count, the rental overcharge.

We have examined the record and find that the $48 verdict is amply supported by evidence that for six months plaintiff paid $8.00 a month in excess of the $12 rental which obtained for this flat under the applicable federal statute, and that Edward and Mario were the owners of the property. This verdict cannot be disturbed.

## 3. THE VERDICT ON THE THIRD COUNT, MALICIOUS PROSECUTION

The third count alleges that defendants with malice, without cause, and for the purpose of harassing and injuring plaintiff and his family, filed and maintained an unlawful detainer action in which defendants herein ultimately failed because the unlawful detainer complaint did not state facts sufficient to constitute a cause of action.

On this count plaintiff was nonsuited as to all the defendants except Edward. He had been the sole plaintiff in the unlawful detainer action. Edward claims that the verdict on this count is not sustained by the evidence and that certain instructions pertaining to malicious prosecution were erroneous.

The complaint in the unlawful detainer action alleged that in February, 1950, Edward gave the tenant written notice to

quit and deliver possession; that Edward was in good faith seeking to recover possession for use and occupancy as a dwelling by himself and his newly acquired wife; that in March, 1950, he gave the tenant a three-day notice to deliver possession or pay all overdue rent, which the tenant refused to do; that the tenant was maintaining a nuisance on the premises, causing damage to the property and to other tenants; and prayed for restitution of the premises and cancellation of the rental agreement.

One of the instructions given at plaintiff's request told the jury: "If you find from the evidence that there was no rent due on April 14, 1950, the date the action for unlawful detainer was filed in the Municipal Court, as a matter of law, there was no probable cause for filing said action."

This was an erroneous instruction. It left out of account and withdrew from the jury's consideration evidence which tended to prove that Edward did in good faith need and desire this flat for the occupancy of himself and bride; that nuisances were being committed upon the premises, the making of unusual noises at night and the throwing of garbage out the door and down the stairway to the distress of other tenants; that he believed the tenant was behind in his rent payments; that Edward made full disclosure to an attorney (not his present counsel); he was advised he had good cause to evict the tenant; and, believing such advice and relying thereon he read and signed the unlawful detainer complaint prepared by his attorney. The facts which this evidence tended to prove were material to the issue of probable cause. (See cases collected in 16 Cal.Jur. 737-743, Malicious Prosecution, §§ 9-11, and supplements thereto.) The circumstance that the causes for eviction may have been inadequately pleaded in the unlawful detainer complaint or that permission to evict may not have been obtained from the rent control authority, would not as a matter of law negative the existence of probable cause if Edward made a fair and full statement of the facts to his attorney, was advised he had good cause and in reliance upon that advice instituted the action. We do not find that the error inherent in this instruction was cured by other instructions given.

The verdict on the third count cannot be sustained. We need not consider defendants' other points of asserted error.

The judgment is reversed, except that portion thereof which decrees that plaintiff have and recover $48 from defendants

Mario and Edward Giacosa with interest thereon at 7 per cent per annum until paid, which portion is affirmed; and the cause is remanded for such proceedings as are consistent with the views herein expressed. In view of partial affirmance and major reversal of the judgment, it is ordered that defendants Edward and Mario Giacosa have and recover their costs upon this appeal.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 24, 1953, and respondent's petition for a hearing by the Supreme Court was denied January 20, 1954.