[Civ. No. 23518.   First Dist., Div. One.   June 21, 1967.]

ROBERT W. CAMERON, Plaintiff and Appellant, v. ROBERT E. WERNICK et al., Defendants and Respondents.

Graham, James & Rolph and John M. Collette for Plaintiff and Appellant.

Severson, Werson, Berke & Larson, Kurt W. Melchior, Cooper, White & Cooper, Sheldon G. Cooper and J. Raymond Healy for Defendants and Respondents.

ELKINGTON, J.—Appellant, plaintiff below, appeals from a judgment of dismissal entered upon the sustaining of demurrers, without leave to amend, to his complaint for libel.

The complaint, with regard to the subject of this appeal, alleges that plaintiff is engaged in the publishing, manufactur-

892

ing, merchandising and distribution business, and that he has built up a reputation for fair dealing, integrity and responsibility. It states that defendant Wernick (a professional writer) and defendant Curtis Publishing Company, through malice, caused to be published in The Saturday Evening Post, a magazine with a 6,500,000 bi-weekly circulation, a false, libelous and defamatory article.[1] It is alleged that the article has caused the public to hold plaintiff in contempt and ridicule, and has caused injury to his business and reputation.

It appears from the complained of story (which is incorporated in the complaint) that plaintiff, defendant Wernick and others, had collaborated in the production of a very successful book. Urging haste in its publication plaintiff is quoted as saying, ''I can't be the only man in this country with an eye for a fast buck. . . . Somebody else is going to get the same idea any day now, and we have to beat him to it.'' Again referring to plaintiff, the article states: ''At a time when he was reporting to his collaborators a sales figure [for the book] of around 4,000, he was quoted . . . in the San Francisco *Chronicle,* giving a figure of half a million.''

Plaintiff contends that the magazine article is defamatory on its face, without need of explanatory allegations. He does not contend that he has alleged special damages.

By their demurrers defendants have admitted, for the purpose of testing the pertinent questions of law, all properly pleaded allegations of the complaint including the falsity of the magazine article. (See *Woodroof* v. *Howes,* 88 Cal. 184, 189 [26 P. 111] ; *Lee* v. *Hensley,* 103 Cal.App.2d 697, 704 [230 P.2d 159] ; 2 Witkin, Cal. Procedure (1954) Pleading, § 484, p. 1471.)

We are guided by principles requiring courts to interpret pleadings liberally with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Chavez* v. *Sargent,* 52 Cal.2d 162, 214 [339 P.2d 801] ; 2 Witkin, Cal. Procedure (1954) Pleading, § 209, pp. 1187-1189.) As against a general demurrer, plaintiff need only plead facts which, liberally interpreted, disclose that he is entitled to some relief. (*Vanoni* v. *Western Airlines,* 247 Cal.App.2d 793, 795 [56 Cal.Rptr. 115] ; *Weltman* v. *Kaye,* 167 Cal.App.2d 607, 614 [334 P.2d 917] ; *Augustine* v. *Trucco,* 124 Cal.App.2d 229, 236 [268 P.2d 780.])

---

[1]Section 48a, Civil Code, relating to newspaper and radio defamation, and demand for retraction, does not apply to magazine articles. (*Morris* v. *National Federation of the Blind,* 192 Cal.App.2d 162, 165-166 [13 Cal.Rptr. 336] ; see *Application of Cepeda,* 233 F.Supp. 465.)

█ Libel is defined as a false and unprivileged publication which exposes one to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation. (Civ. Code, § 45.) Libel on its face is that "which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement [the extrinsic circumstances which show that it was understood in its defamatory sense], innuendo [allegation of defamatory meaning] or other extrinsic fact." (Civ. Code, § 45a.) Accordingly, if the article in question is defamatory of plaintiff and further, if it so appears on its face without extrinsic evidence, the complaint states a cause of action without the necessity of pleading special damages, and the demurrers were improperly sustained.

" 'The code definition of libel is very broad and has been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation. [Citations.] █ In the determination of this question, the alleged libelous publication is to be construed "as well from the expressions used, as from the whole scope and apparent object of the writer." [Citations.]' " (*MacLeod* v. *Tribune Publishing Co.*, 52 Cal.2d 536, 546 [343 P.2d 36]) █ A person may be liable for what he insinuates as well as for what he says explicitly. (*Bates* v. *Campbell*, 213 Cal. 438, 441-442 [2 P.2d 383]; *MacLeod* v. *Tribune Publishing Co.*, *supra*, 52 Cal.2d 536, 547; *Maidman* v. *Jewish Publications, Inc.*, 54 Cal.2d 643, 651 [7 Cal.Rptr. 617, 355 P.2d 265, 87 A.L.R.2d 439].) █ An article may be libelous on its face even though it is susceptible to an innocent interpretation (*MacLeod* v. *Tribune Publishing Co.*, *supra*, 52 Cal.2d 536, 548; *Williams* v. *Daily Review, Inc.*, 236 Cal.App.2d 405, 410-411 [46 Cal.Rptr. 135]; *Fairfield* v. *Hagan*, 248 Cal.App.2d 194, 200 [56 Cal.Rptr. 402]). █ The initial determination as to whether a publication on its face is reasonably susceptible of a defamatory meaning is one of law (*MacLeod* v. *Tribune Publishing Co.*, *supra*, 52 Cal.2d 536, 546; *Williams* v. *Daily Review, Inc.*, *supra*, 236 Cal.App.2d 405, 410; *Arno* v. *Stewart*, 245 Cal.App.2d 955, 959-960 [54 Cal.Rptr. 392]). █ It is error for the court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning. (*Mellen* v. *Times-Mirror Co.*, 167 Cal. 587, 593 [140 P. 277, Ann. Cas. 1915C 766]; *Williams* v. *Daily Review, Inc.*,

*supra*, 236 Cal.App.2d 405, 411-413; *Arno* v. *Stewart, supra,* 245 Cal.App.2d 955, 960.)

■ In the light of these rules, the question before us seems to be—can it be said as a matter of law that, absent explanatory matter, one could reasonably give to the subject article a defamatory meaning? We believe this question must be answered affirmatively and that accordingly the lower court erred in the appealed-from ruling.

■ The term "fast buck" is becoming a familiar everyday expression. A "fast buck operator" or "out for a fast buck" is sometimes used to describe a businessman of questionable ethics. The complained-of expression is defined in the Dictionary of American Slang (Wentworth and Flexner, 1960), at page 178, as: "Fast buck—Lit., a quickly or easily acquired dollar; fig., money obtained quickly or easily and often unscrupulously. 1949: 'Tryin' to hustle me a fast buck.' A. Kober in New Yorker, Nov. 5, . . ." ■ [See fn. 3]. We believe the words could reasonably have been understood in a derogatory and defamatory sense.[2]

■ The accusation that plaintiff indicated sales of 500,000 books to a newspaper while reporting around 4,000 to his collaborators could reasonably be construed as a falsehood either to the press or to the collaborators. If the latter, a further implication of dishonest accounting to one's partners could be drawn. These words also could reasonably be understood in a defamatory sense.

Quoting Dean Prosser in his Law of Torts, Third Edition, pages 813-814, respondents urge: ". . . anyone who submits something to the public for its approval, as in the case of books, articles, advertisements, . . . or even one who, by taking a belligerent or controversial position invites public controversy, is regarded as having sought public judgment, and in no position to complain if that judgment, opinion, comment or criticism is adverse." This, however, is no more than a statement of a conditional or qualified privilege of fair comment, which, where malice is alleged and proved, must fall. Here malice is alleged.

■ "Normally, privilege is an affirmative defense which must be pleaded in the answer [citation]. However, if the

---

[2]As indicated, the article quotes plaintiff, himself, as making the complained-of statement. Falsely ascribing statements to a person which would have the same damaging effect as a defamatory statement about him is libel. (*Kerby* v. *Hal Roach Studios,* 53 Cal.App.2d 207, 213-214 [127 P.2d 577].)

complaint discloses existence of a qualified privilege, it must allege malice to state a cause of action." (*Morris* v. *National Federation of the Blind, supra,* 192 Cal.App.2d 162, 164-165; see also *Maidman* v. *Jewish Publications, Inc., supra,* 54 Cal. 2d 643, 652; *Everett* v. *California Teachers Assn.,* 208 Cal. App.2d 291, 293 [25 Cal.Rptr. 120]; 2 Witkin, Summary of Cal. Law (1960) p. 1292.)

We have considered, from a reading of the entire article, the context in which the complained of language is found. (See *MacLeod* v. *Tribune Publishing Co., supra,* 52 Cal.2d 536, 546.) Nothing appears which changes our conclusion that the quoted portions might reasonably be construed as defamatory and having a tendency to injure plaintiff in his reputation and occupation.

We do not, of course, determine on this appeal that plaintiff was in fact defamed or that his business or reputation was injured. It remains for the trier of fact to make, or not to make, such a determination. (*Maidman* v. *Jewish Publications, Inc., supra,* 54 Cal.2d 643, 651; *Williams* v. *Daily Review, Inc., supra,* 236 Cal.App.2d 405, 411.)

The judgment is reversed.

Molinari, P. J., and Sims, J., concurred.