[Civ. No. 25705. First Dist., Div. Four. Feb. 4, 1970.]

JAMES EDWARD JOHNSON, Plaintiff and Appellant, v.
CITY OF PACIFICA, Defendant and Respondent.

## COUNSEL

Howard B. Crittenden, Jr., for Plaintiff and Appellant.

Carroll, Davis, Burdick & McDonough and Gerald P. Martin, Jr., for Defendant and Respondent.

## OPINION

**CHRISTIAN, J.**—James Edward Johnson (hereinafter "plaintiff") brought this action against the City of Pacifica, two of its police officers and others. The action seeks recovery of damages incurred when, as a result of the allegedly negligent conduct of the officers, plaintiff was arrested and temporarily incarcerated on forgery charges of which he was innocent. The city's general demurrer to his second amended complaint was sustained without leave to amend. Plaintiff appeals from the subsequent judgment of dismissal as to the city. The question presented is whether the complaint states a cause of action against it or whether, upon the facts pleaded, the city is immune from liability under provisions of the California Tort Claims Act of 1963. (Stats. 1963, ch. 1681, p. 3267; Gov. Code, § 810 et seq.)

Concerning the conduct of the police officers and the consequences thereof, the complaint alleges as follows: Employed by the city as "policemen" and acting "within the scope of their employment," the officers received complaints from Pacifica merchants that two forged checks had been passed. After conducting an investigation, the officers reported to the San Mateo County district attorney that plaintiff had been positively identified as the person who had passed the checks. The district attorney there-

upon caused a criminal complaint to be filed charging plaintiff with a violation of Penal Code section 470 in connection with each of the checks.

A warrant for plaintiff's arrest was issued and teletyped to Daly City, where he lived. He was arrested, pursuant to the warrant, by the Daly City police. He necessarily incurred expenses (pleaded as items of special damage) in posting a bail bond to secure his release, and in employing an attorney to defend him. After further investigation and an extensive showing of various facts by plaintiff (including an alibi), the district attorney dismissed the criminal proceedings.

The officers' investigation of the check offenses was "negligently" conducted in that they failed to follow "established police practices" (or "established police procedures") which control such matters. The complaint alleges the existence of such "established police practices," describes them, and sets forth in detail the respects in which the officers are claimed to have been negligent in violating them.[1] It further alleges that the district attorney caused the criminal complaint against plaintiff to be filed "as a direct and proximate" result of the "negligent acts" of the officers, and "acting upon [their] false and negligent representations of a positive identification of the plaintiff, . . ."

The complaint alleges that the officers had the "ministerial" duty of fully investigating the suspected offenses "in accordance with said established police procedures" and then of reporting the results "fully, fairly and completely" to the district attorney. It is alleged that only the district attorney had discretionary functions in the later handling of any prosecution and that neither of the officers "had any discretion" in relation to the events alleged.

■ The trial court concluded that the complaint failed to state a cause of action because, upon the facts pleaded, the officers were immune from liability under Government Code section 821.6 [2] and the city was in

---

[1] These allegations are too lengthy to permit a full summary here. Generally, they charge that the officers procured a false identification of plaintiff as the check passer because they omitted to make inquiries of the purported maker of the checks, of the drawee bank, or of other law enforcement agencies (which inquiries, if pursued, would have disclosed that someone other than plaintiff had been passing similar checks with a similar *modus operandi* and had probably passed the Pacifica checks), failed to compare the check endorsements with plaintiff's wholly dissimilar handwriting, and had the cashing merchants' employees identify him from an obscure copy of a photograph rather than having them view him in person. Each of the acts and omissions alleged is fairly stated to have been in violation of an "established police practice" which, as described in the complaint, required contrary action by the officers in their investigation of the checks.

[2] Section 821.6. "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

consequence immune under subdivision (b) of section 815.2.[3] We uphold the trial court's determination and affirm the judgment of dismissal.

Analysis of the city's claim of immunity must start with the premise that the Tort Claims Act leaves in effect the doctrine of *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457], modified 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325], that "when there is negligence, the rule is liability, immunity is the exception." (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352]; Gov. Code, § 820, subd. (a).) A possible basis of immunity would be a determination that the damages suffered by plaintiff were caused by the officers' "act or omission [which] was the result of the exercise of the discretion vested in [them]." (Gov. Code, § 820.2; see *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252, 260 [74 Cal.Rptr. 389, 449 P.2d 453].) But the complaint went to extraordinary lengths to allege that the officers were acting under controls which eliminated any exercise of discretion in the performance of their duties. We will therefore assume, as the court below apparently did in ruling on the demurrer, the factual validity of plaintiff's surprising claim that a police officer can be acting in a nondiscretionary capacity when he investigates a suspected crime and determines whether to go to the district attorney with the information he has collected.

The prosecutor's immunity established by Government Code section 821.6 (see fn. 2, above) deals more specifically with the situation alleged by plaintiff. Plaintiff contends that this immunity is enjoyed only by district attorneys and other "legally trained personnel." ■ But a literal application of the language of the enactment establishes immunity on the part of these officers. They are "employees of a public entity" and hence are, by definition (§ 811.4), public employees within the meaning of section 821.6. Plaintiff points out that Government Code section 26501 makes it the duty of the district attorney to "institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses . . ." and argues that police officers therefore cannot come within the immunity created by section 821.6. But section 26501 contains no suggestion that its use of the word, "institute," represents any exclusive intent. A dictionary definition of the word (Webster's New Internat. Dict. (3d ed. 1966)) is "to originate and get established [or] cause to come into existence." This complaint alleges that plaintiff suffered damages when the officers' negligent investigation caused the district attorney to launch a prosecution which proved to be unfounded. That is, that they caused the unfounded prosecution "to come into existence." If the legislation had

---

[3]Section 815.2. "(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

been intended to protect only the district attorney, it would have been easy for the draftsman to find an expression more restrictive than "public employee." The use of the broader term implies an intention to extend immunity to functions in addition to those which may be performed only by district attorneys. (*Cf., Stearns* v. *County of Los Angeles* (1969) 275 Cal.App.2d 134 [79 Cal.Rptr. 757]; *Watson* v. *County of Los Angeles* (1967) 254 Cal.App.2d 361 [62 Cal.Rptr. 191].) Moreover, it is not unlawful (even though it is generally inadvisable) for a peace officer to bypass the district attorney and institute a prosecution by going before a magistrate and "subscribing" a complaint. (Pen. Code, § 806.) It would be anomalous to hold that an officer who so proceeds is immune while one who goes to the district attorney is liable.

The legislative history of section 821.6 also points away from the construction suggested by plaintiff. The Senate Committee comments to section 821.6, reprinted in Van Alstyne, California Government Tort Liability (Cont.Ed.Bar 1964), page 531, declare that the section "continues the existing immunity of public employees." The comment cites four cases (*Hardy* v. *Vial* (1957) 48 Cal.2d 577 [311 P.2d 494]; *Coverstone* v. *Davies* (1952) 38 Cal.2d 315 [239 P.2d 876]; *White* v. *Towers* (1951) 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636]; *Dawson* v. *Martin* (1957) 150 Cal.App.2d 379 [309 P.2d 915]), not one of which involved a district attorney; all four broadly indicate that investigative officers enjoy immunity from tort liability for malicious prosecution.

Plaintiff points to Restatement of Torts, section 656, comment d, as indicating that the immunity does not extend to police officers. But the editors of the California annotations (1957) acknowledge that in this state, "[t]he immunity is considerably broader than that set forth by the Restatement." Also see Prosser, Torts (3d ed.) section 113, page 856, indicating that the prosecutor's immunity "is, in general, extended to the police and other law enforcement officers acting within the scope of their duties." (*Cf., Bromund* v. *Holt* (1964) 24 Wis.2d 336 [129 N.W.2d 149].)

Conceding that the complaint made no attempt to plead a cause of action for malicious prosecution against the officers (the requisite element that the officers acted maliciously is absent), plaintiff contends that section 821.6 has no application because his claim is based instead on a theory of negligence. This argument overlooks the closing clause of the section, which grants immunity "*even* if he acts maliciously and without probable cause." (Italics added.) If the Legislature had inexplicably intended to

deny immunity to an officer who merely acts negligently while protecting one who, more culpably, is guilty of malicious prosecution, it would have been superfluous to use the word "even." (See *Singleton* v. *Perry* (1955) 45 Cal.2d 489, 494 [289 P.2d 794]; 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 90, p. 1261, for a definition of malicious prosecution.) Even before the enactment of section 821.4, it was not the rule that an officer must be guilty of malice in order to be immune but that he has "absolute immunity, *notwithstanding* malice or other sinister motive [when he institutes or takes part in criminal actions]." (*Hardy* v. *Vial, supra,* 48 Cal.2d 577, 582, italics added.)

In another of the decisions from which, according to the legislative history, section 821.6 was derived (*White* v. *Towers, supra,* 37 Cal.2d 727) the Supreme Court upheld a determination, on demurrer, that an investigator of the Fish and Game Commission was immune from civil liability for malicious prosecution of criminal proceedings in the course of his employment. The policy underlying the immunity was stated by the Supreme Court as follows: "When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the investigative or accusatory level would wreak untold harm. 'Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it in execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution.' [Citation.] It is patent that defendant Towers is a law enforcement officer, charged with the duty of enforcing laws for the protection of fish and game. As such officer he is entitled to the immunity from civil liability with which the law surrounds officials directly connected with the judicial processes. To rule otherwise would place every honest law enforcement officer under an unbearable handicap and would redound to the detriment of the body politic. 'The public welfare requires that this choice (whether or not to institute proceedings) shall be free of all fear of personal liability. To assure this freedom of action it is deemed best to make the assurance positive and definite by securing him against even actions based upon a malicious abuse of his official power.' [Citation.]" (*White* v. *Towers, supra,* 37 Cal.2d at pp. 729-730.) These observations apply with greater force to the present plaintiff's attempt to recover for the officers' mere negligence in their participation in the prosecution. Negligence is far easier to prove than malice,

and the harassment of law enforcement officers which would result from an extention of liability would, in the same proportion, be greater.

The judgment is affirmed.

**DEVINE, P. J.**—I concur in affirmance of the judgment. I believe, however, that the judgment may be sustained on another ground.

As a matter of law, the actions of the police officers did not constitute the proximate cause of any damage to plaintiff, and plaintiff cannot make them do so simply by a general allegation in his complaint. As the matter is explained in 2 Chadbourn, Grossman & Van Alstyne, California Pleading, section 971, page 63, from a theoretical standpoint, it appears that the allegation that acts or omissions of a defendant are the proximate cause of damages to the plaintiff should be classified as a conclusion of law. As a practical matter, however, the distinction between conclusions of law and ultimate facts is not clear and involves, at most, a matter of degree. (*Burks* v. *Poppy Construction Co.,* 57 Cal.2d 463, 473-474 [20 Cal.Rptr. 609, 370 P.2d 313].) Ordinarily, therefore, an allegation that an act negligently performed, or an omission to do something which ought with due care to have been done, proximately caused damages to the plaintiff is sufficient. But where, as in the complaint herein, facts are alleged by plaintiff himself which show that whatever damages were received by him were produced by an efficient intervening cause, a general demurrer on the ground that the complaint states no cause of action is properly sustained. Where matter which constitutes a defense appears from the face of the complaint, a general demurrer is sustainable. (*Routh* v. *Quinn,* 20 Cal.2d 488, 493 [127 P.2d 1, 149 A.L.R. 215]; *Lingsch* v. *Savage,* 213 Cal.App.2d 729, 740 [29 Cal.Rptr. 201, 8 A.L.R.3d 537].)

When a statement of facts is put before the district attorney, as it is alleged by plaintiff was done in this case, it becomes his duty to decide whether or not to prosecute. (*Taliaferro* v. *City of San Pablo,* 187 Cal.App.2d 153 [9 Cal.Rptr. 445].) He is the one who should ascertain whether the evidence submitted by the police officers is sufficient for the issuance of the complaint. If he chooses to do this by relying on the reports of peace officers, without testing the officers, for example by putting to them the inquiry whether they had made the tests which plaintiff says they should have made, this is an exercise of his, the district attorney's, discretion. Even if he places his reliance on the officers' reports because of pressure of business, or even because of insistence by the officers that their conclusions and observations are correct, nevertheless, he, the district attorney, exercises discretion in accepting these representations. He becomes the prime mover when he signs the complaint. His action constitutes the

sole proximate cause of plaintiff's damages. Of course, this bars recovery by plaintiff because the prosecutor is immune from liability for wrongful exercise of his discretion.

**RATTIGAN, J.**—I dissent. I first disagree with the main opinion's conclusion that the defendant police officers, upon the facts pleaded here and as a matter of law, were immune from negligence liability under Government Code section 821.6. The Legislature's purpose in enacting section 821.6 was to grant public employees *discretionary* immunity from liability for the tort of malicious prosecution, not from liability for their *nondiscretionary* conduct amounting to negligence. (Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar 1964) §§ 5.63-5.64, pp. 170-172; Legislative Committee Comments, § 821.6 and proposed [but not enacted] § 816, reprinted in Van Alstyne (*op. cit.*) at p. 531; A Study Relating to Sovereign Immunity (1963) 5 Cal. Law Revision Com. Rep. 411-415. See Van Alstyne, *op. cit.* (1969 Supp.), § 5.63, pp. 24-25 [criticizing, for failure to observe the above-stated distinction, *Watson* v. *County of Los Angeles* (1967) 254 Cal.App.2d 361 [62 Cal.Rptr. 191], discussed *infra*].)

Plaintiff's complaint accords him the benefit of the distinction between *discretionary* and *nondiscretionary* immunity; as the main opinion indicates, he has effectively alleged his claim ("surprising" or not) that the officers had no discretion in the performance of their duties and exercised none. A second distinction operates in his favor because he pleads no cause of action for malicious prosecution against anyone (and on the appeal has disavowed any intent or attempt to do so), but has fairly stated facts sufficient to constitute a cause of action for negligence against the officers. Because negligence and malicious prosecution are wholly distinct torts (see *Maxon* v. *Security Ins. Co.* (1963) 214 Cal.App.2d 603, 615 [29 Cal.Rptr. 586]), I am not persuaded that immunity from liability for one was granted by a legislative enactment (§ 821.6) which was avowedly directed to the other. In this regard, I have in mind the Supreme Court's admonition that "The 1963 Tort Claims Act did not alter the basic teaching of *Muskopf* v. *Corning Hospital Dist.,* . . . 55 Cal.2d 211, 219: 'when there is negligence, the rule is liability, immunity is the exception.'" (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352]. See Van Alstyne, *op. cit. supra* (1964 ed.) § 7.3, p. 285.)

In my view, the event of "instituting" a "judicial proceeding" (the Legislature's words in § 821.6) occurs only when a public-employee actor sets the *judicial* process in motion by going to court. Until that happens, there is no "judicial proceeding" (see *Rupley* v. *Johnson* (1953) 120 Cal. App.2d 548, 553 [261 P.2d 318]) and the actor's functions do not amount

to one. (*Vargas* v. *Giacosa* (1953) 121 Cal.App.2d 521, 527-528 [263 P.2d 840]; *Hayashida* v. *Kakimoto* (1933) 132 Cal.App. 743, 746 [23 P.2d 311].) The *Vargas* and *Hayashida* decisions have been disapproved insofar as they held that a malicious prosecution action did not lie for instituting a "proceeding" before an administrative—as distinguished from a judicial—tribunal. (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 581-582 [311 P.2d 494].) The disapproval, however, did not reach the essential *Vargas-Hayashida* point that for purposes of a malicious prosecution action a "proceeding" does not begin in theory until it begins in fact. All three decisions (*Vargas*, *Hayashida* and *Hardy*) involved malicious prosecution actions. Since the Legislature had malicious prosecution in mind when it enacted section 821.6 (as it stated in the committee comments cited *supra*[1] and in the main opinion) it must have intended to draw the immunity line at the point where the actor goes to court and not sooner. That the result may be "anomalous" was and is the Legislature's problem, not ours; and I am unwilling to ignore reasonably clear legislative intent for the purpose of avoiding anomaly. I therefore disagree with the main opinion's thesis that *causing* the institution of a judicial proceeding (which means preceding it, as plaintiff has alleged here) is the same as "instituting" one within the meaning of Government Code section 821.6.

This position prompts me to note that the defendant city's argument for immunity is principally based upon *Watson* v. *County of Los Angeles* (1967) 254 Cal.App.2d 361 [62 Cal.Rptr. 191] (which the trial court followed in sustaining the city's demurrer) and *Stearns* v. *County of Los Angeles* (1969) 275 Cal.App.2d 134 [79 Cal.Rptr. 757]. Because my colleagues' opinions do not (as, in light of their conclusions, they need not) reach this argument, I would discuss it here. The *Watson* court held that certain public employees (two court clerks) were immune from liability where the civil complaint against them showed that the plaintiff's injury

---

[1] I would note, of each of the malicious prosecution decisions mentioned by the Legislature in the committee comments, that the defendants held immune from liability had in fact "instituted" the judicial or other proceedings involved. (See *Hardy* v. *Vial* (1957) 48 Cal.2d 577, 580 [311 P.2d 494]; *Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 322 [239 P.2d 876]; *White* v. *Towers* (1951) 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636] (see also the reference to *White* in *Hardy* v. *Vial, supra,* at p. 582); *Dawson* v. *Martin* (1957) 150 Cal.App.2d 379, 381 [309 P.2d 915].) It also bears mentioning that, in another context but upon a recommendation from the same commission which came up with the Tort Claims Act of 1963, the Legislature has established that a "proceeding" (including a "criminal proceeding") begins only when the government's power to compel testimony is invoked. (See Evid. Code, §§ 901, 903; *id.,* Legislative Committee Comments, §§ 901, 910; 6 Cal. Law Revision Com. Rep. (1964) 309-327; *id.* vol. 7 (1965), pp. 157-160.) In the conventional police-investigation situation alleged here, this point is not reached.

was the result of their negligence in the conduct of a criminal prosecution (of the plaintiff) which had already been instituted, and which was pending in their court, when they were negligent. As this time sequence in *Watson* was pointed out in both decisions (*Watson* v. *County of Los Angeles, supra,* at p. 363 [as quoted in *Stearns* v. *County of Los Angeles, supra,* at p. 145]), I can readily distinguish *Watson* from the present case because under the *Watson* time sequence the employees were immune from liability for their conduct in "prosecuting" a "judicial proceeding" within the plain meaning of section 821.6.

In *Stearns* an attempted cause of action alleged that the extrajudicial negligence of a public employee (a deputy county coroner) caused a criminal prosecution of the plaintiff to be instituted afterward. (*Stearns* v. *County of Los Angeles, supra,* 275 Cal.App.2d 134 at pp. 136, 137.) The court applied *Watson* reasoning (*id.,* at p. 137 ["the same reasoning is applicable here"]) to hold the employee immune under the same statute. But the *Stearns* complaint did not charge the employee with "prosecuting" a judicial proceeding, because it alleged that his negligence preceded the criminal prosecution which resulted; nor did it charge him with "instituting" the criminal proceeding. For these reasons I cannot conclude, as the *Stearns* court did (*id.*), that *Watson* reasoning should have applied to produce a *Watson* result in the later case. Distinguishing *Watson* on its facts because they differ from those pleaded here, and *Stearns* on its law because I disagree with it, I would follow neither decision in the present case.

The concurring opinion holds that causation, as an indispensable element of a negligence cause of action, is absent here as a matter of law. In a negligence action, however, the pleading of proximate cause in general terms—as plaintiff has done here—is good against a general demurrer (*Guilliams* v. *Hollywood Hospital* (1941) 18 Cal.2d 97, 103 [114 P.2d 1]; 2 Witkin, Cal. Procedure (1954) Pleading, § 305, pp. 1282-1283), and the defendant city's demurrer therefore admitted the allegations of proximate cause. (*Cameron* v. *Wernick* (1967) 251 Cal.App.2d 890, 892 [60 Cal.Rptr. 102]; 2 Witkin, *op. cit. supra,* Pleading, § 484, p. 1471.) In my view, the concurring opinion confuses the element of proximate cause, validly pleaded, with the prospect that independent intervening causation will be shown in plaintiff's proof. For this reason, I disagree with it.

I would hold that upon the facts pleaded here the defendant police officers are not immune from liability for their negligence under Government Code section 821.6, which means that the city is not immune under section 815.2, subdivision (b), and that a cause of action is stated against it under subdivision (a) thereof. The contrary determination reflected in this judgment,

in my opinion, effects a result which the Legislature did not intend in enacting section 821.6, and which the rules of pleading should not permit. I would therefore reverse it.

A petition for a rehearing was denied February 20, 1970. Rattigan, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied April 1, 1970.