[No. D034606. Fourth Dist., Div. One. June 6. 2000.]

CITY OF OCEANSIDE et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
TRACIE G. MacDONALD, Real Party in Interest.

COUNSEL

Duane E. Bennett, City Attorney, and Jodi L. Doucette, Deputy City Attorney, for Petitioners.

No appearance for Respondent.

Law Offices of Joshua D. Gruenberg and Joshua D. Gruenberg for Real Party in Interest.

OPINION

McDONALD, J.—The City of Oceanside (City) and Rodney Ferris (together with City, Defendants), defendants in a personal injury action brought by the real party in interest, plaintiff Tracie G. MacDonald, filed a petition for a peremptory writ of mandate seeking reversal of an order denying their motion for summary judgment. Defendants contend the firefighter's rule applies as a matter of law and is a complete defense to MacDonald's action.[1] We agree and grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

In July 1996 City lifeguards, including Ferris, and Camp Pendleton lifeguards, including MacDonald, conducted a joint operation to rescue a jet ski collision victim who was stranded in ocean water adjacent to a Camp Pendleton jetty. The lifeguards placed the victim on a backboard and attempted to carry him over the jetty rocks. After the lifeguards made only limited progress in transporting the victim along the jetty rocks, Ferris asserted authority over the joint rescue operation and directed MacDonald and other lifeguards to lower the victim off the rocks onto a floating sled behind a jet ski, which would ferry the victim to a nearby harbor patrol boat. While MacDonald stood in the water to assist the victim off the rocks and onto the sled, a wave pushed her against the jetty rocks. She sustained back and other injuries.

MacDonald filed a personal injury action against Defendants, alleging Ferris was negligent in directing her to follow an unreasonable rescue plan. Defendants filed a motion for summary judgment or, in the alternative, summary adjudication of issues, asserting MacDonald's action was barred

---

[1]City alternatively contends it is statutorily immune from liability under Government Code section 820.2. Because we dispose of the petition on grounds of the firefighter's rule we do not address City's statutory immunity claim.

by the firefighter's rule and City's immunity for discretionary acts under Government Code section 820.2. The trial court denied Defendants' summary judgment motion and granted in part their alternative summary adjudication motion on certain causes of action. The court found the firefighter's rule did not apply to the facts alleged in this case. It further found Government Code section 820.2 did not apply because Defendants' alleged actions were not basic policy decisions.

Defendants filed this petition for a peremptory writ of mandate, prohibition or other relief. We issued an order to show cause and a stay of trial and discovery pending disposition of the petition.

DISCUSSION

I

*Summary Judgment Standard of Review*

The purpose of a motion for summary judgment is "to discover whether the parties possess evidence requiring the fact-weighing procedures of a trial. [Citations.]" (*Appalachian Ins. Co. v. McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 10 [262 Cal.Rptr. 716].) Code of Civil Procedure section 437c, subdivision (c) provides that a motion for summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As an appellate court, we conduct a de novo review to determine whether there are any genuine issues of material fact. (*Appalachian Ins. Co., supra*, at p. 11.) An appellate court "make[s] its own independent determination of the construction and effect of the papers submitted [citation], and the validity of the ruling is reviewable irrespective of the reasons stated. [Citation.]" (*Preis v. American Indemnity Co.* (1990) 220 Cal.App.3d 752, 757 [269 Cal.Rptr. 617].)

We strictly construe the moving party's papers and liberally construe the opposing party's papers. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46], superseded by statute on other grounds as noted in *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 70-73 [81 Cal.Rptr.2d 360].) "Doubts as to the propriety of summary judgment should be resolved against the moving party. [Citation.]" (*Salasguevara v. Wyeth Laboratories, Inc.* (1990) 222 Cal.App.3d 379, 383 [271 Cal.Rptr. 780].) Furthermore, "[i]t is the moving party's burden to make a sufficient showing that the claim is entirely without merit and if that showing is deficient summary judgment must be denied. [Citation.]" (*Id.* at p. 384.)

■ "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko v. Holy Spirit Assn., supra,* 46 Cal.3d at p. 1107.) Code of Civil Procedure section 437c, subdivision (o)(2) provides: "For purposes of motions for summary judgment . . . : [¶] . . . [¶] *A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown* that one or more elements of.the cause of action, even if not separately pleaded, cannot be established, or *that there is a complete defense to that cause of action.* Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Italics added.)

## II

### *Firefighter's Rule Generally*

In 1968 California adopted the almost century-old, common law firefighter's rule. (*Giorgi v. Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355, 357-360 [72 Cal.Rptr. 119]; *Lipson v. Superior Court* (1982) 31 Cal.3d 362, 367 [182 Cal.Rptr. 629, 644 P.2d 822]; *Walters v. Sloan* (1977) 20 Cal.3d 199, 202 [142 Cal.Rptr. 152, 571 P.2d 609].) Although generally "[w]e all have the duty to use due care to avoid injuring others," the firefighter's rule provides an exception to that general duty of care; it is "a special rule . . . [that] limit[s] the duty of care the public owes to firefighters and police officers." (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 536, 538 [34 Cal.Rptr.2d 630, 882 P.2d 347] (hereafter *Neighbarger*).) ■ *Neighbarger* stated: "Under the firefighter's rule, a member of the public who negligently starts a fire owes no duty of care to assure that the firefighter who is summoned to combat the fire is not injured thereby. [Citations.] Nor does a member of the public whose conduct precipitates the intervention of a police officer owe a duty of care to the officer with respect to the original negligence that caused the officer's intervention. [Citations.]" (*Id.* at p. 538, fn. omitted.)

"The undergirding legal principle of the rule is assumption of the risk . . . ." (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1061 [77 Cal.Rptr.2d 202, 959 P.2d 360] (hereafter *Calatayud*).) Firefighters, " 'whose occupation by its very nature exposes them to particular risks of harm,

" 'cannot complain of negligence in the creation of the very occasion for [their] engagement.' " ' [Citation.]" (*Walters v. Sloan, supra,* 20 Cal.3d at p. 202.) "[T]he [firefighter's] rule is based on a principle . . . applicable to our entire system of justice—one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby." (*Id.* at p. 204.) "As a matter of public policy and fairness, when firefighters and police officers are *injured by the very hazard they have been employed to confront,* they are generally precluded from recovering in tort damages from private persons. [Citations.] The firefighter's rule is based on the public policy that officers injured in the line of duty should be compensated through the public fisc rather than by individual tort recoveries. [Citation.]" (*Tilley v. Schulte* (1999) 70 Cal.App.4th 79, 83 [82 Cal.Rptr.2d 497], italics added.) "The firefighter's rule precludes recovery for injuries suffered as a direct consequence of responding to calls in the line of duty. [Citation.]" (*Ibid.*)

■ However, the firefighter's rule is subject to a common law exception. "The firefighter does not assume every risk of his or her occupation. [Citation.] The rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer has arrived on the scene. [Citations.]" (*Neighbarger, supra,* 8 Cal.4th at p. 538.) The firefighter's rule is also subject to a statutory exception. In 1982 Civil Code[2] section 1714.9[3] was enacted, "codifying certain exceptions" to the firefighter's rule. (*Calatayud, supra,* 18 Cal.4th at p. 1063, fn. omitted.) Section 1714.9 permits liability for negligent acts of any person that cause injury to a police officer, firefighter, or emergency

[2]All further statutory references are to the Civil Code unless otherwise specified.

[3]Section 1714.9 provides in part: "(a) Notwithstanding statutory or decisional law to the contrary, *any person is responsible* not only for the results of that person's willful acts causing injury to a peace officer, firefighter, or any emergency medical personnel employed by a public entity, but also *for any injury occasioned to that person by the want of ordinary care or skill* in the management of the person's property or person, in any of the following situations: [¶] (1) *Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel.* [¶] (2) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel, violates a statute, ordinance, or regulation, and was the proximate cause of an injury which the statute, ordinance, or regulation was designed to prevent, and the statute, ordinance, or regulation was designed to protect the peace officer, firefighter, or emergency medical personnel. [¶] . . . [¶] (3) Where the conduct causing the injury was intended to injure the peace officer, firefighter, or emergency medical personnel." (Italics added.)

Enactment of section 1714.9 "was prompted by the decision in *Hubbard v. Boelt* (1980) 28 Cal.3d 480 [169 Cal.Rptr. 706, 620 P.2d 156], in which the court rejected a policeman's suit based on the negligent conduct of a fleeing suspect, as a result of whose negligence the officer was involved in an automobile accident during the pursuit. [Citation.]" (*Seibert Security Services, Inc. v. Superior Court* (1993) 18 Cal.App.4th 394, 407 [22 Cal.Rptr.2d 514]; *City of Redlands v. Sorensen* (1985) 176 Cal.App.3d 202, 208-209 [221 Cal.Rptr. 728].)

medical personnel when that negligent "conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel." (§ 1714.9, subd. (a)(1).) Section 1714.9, subdivision (a)(1) (hereafter section 1714.9(a)(1)) "broadens the common law exception by eliminating the requirement that the injury result from subsequent *independent* acts of misconduct committed after the defendant becomes aware of the officer's presence. [Citation.]" (*Calatayud, supra,* at p. 1069, original italics.)

## III

### *The Calatayud Decision and Public Policy Considerations Underlying the Firefighter's Rule*

In *Calatayud, supra,* 18 Cal.4th 1057, the California Supreme Court addressed factual circumstances similar to those in this case and concluded the section 1714.9(a)(1) exception to the firefighter's rule did not apply to permit a police officer to sue another agency's officer who accidentally shot him during a joint law enforcement operation. (18 Cal.4th at pp. 1059-1061.) In *Calatayud* two California Highway Patrol officers responded to a reported shooting and on arrival at the scene attempted to detain the suspect. Pasadena Police Officer Calatayud responded to an "officer needs assistance" call, drove to the scene and during his assistance of the Highway Patrol officers in detaining the suspect was accidentally shot by one of the Highway Patrol officers. Officer Calatayud sued the State of California and the Highway Patrol officer who accidentally shot him. The defendants unsuccessfully interposed the firefighter's rule as a bar to liability and the jury returned a verdict for Officer Calatayud that resulted in a $400,000 judgment in his favor. The Court of Appeal affirmed the judgment, finding the section 1714.9(a)(1) exception to the firefighter's rule applicable. The California Supreme Court granted review to determine the scope of the section 1714.9(a)(1) exception to the firefighter's rule. (18 Cal.4th at p. 1061.)

*Calatayud* addressed the question whether the phrase "any person" in section 1714.9(a)(1) "includes public safety members employed by a different agency." (*Calatayud, supra,* 18 Cal.4th at p. 1064.) It found "no evidence the Legislature used the phrase 'any person' to encompass other jointly involved public safety members or to extend the scope of section 1714.9(a)(1) to injury caused by them." (*Id.* at p. 1068.) "Viewed in context, the provision demonstrates singular concern with the prototypical case in which the firefighter's rule is invoked to shield a defendant whose original misconduct occasioned an officer's presence and whose subsequent acts caused injury. Manifestly, that was 'the evil to be prevented by the legislation.' [Citation.] Thus, whatever literal meaning 'any person' may have in

other contexts, applying it to fellow officers also involved in responding to the original misconduct does not ' "conform to the spirit of the act." ' [Citation.]" (*Ibid.*)

*Calatayud* further reasoned that public policy considerations supported its interpretation that section 1714.9(a)(1) did not preclude application of the firefighter's rule in actions by one public safety officer against another in joint public safety operations. (*Calatayud, supra,* 18 Cal.4th at pp. 1068-1072.) One public policy consideration cited by the court was public safety. The *Calatayud* court believed public safety would be impaired or compromised if public safety officers were threatened with potential personal injury lawsuits by fellow public safety officers for actions taken in furtherance of joint public safety operations. The court stated:

"To begin, the effect of section 1714.9(a)(1) is to reimpose a duty of ordinary care (see Civ. Code, § 1714), which would otherwise be abrogated by the firefighter's rule. [Citation.] Public safety members, however, have a primary responsibility for the protection of the public they serve. [Citations.] Sound policy mandates that the discharge of these duties takes precedence over avoiding injury to fellow officers, particularly when responding to a rapidly developing emergency or crisis. [Citations.]

"If section 1714.9(a)(1) were extended to jointly engaged fellow officers, the potential for conflicting duties is substantial given the size of the class of possible defendants and the scope of liability. For example, the list of persons designated as 'peace officers' lengthens regularly [citations], and peace officers have statewide authority to operate regardless of their original jurisdiction [citations]. The reliance on mutual aid agreements further increases the likelihood of joint operations involving public safety officers employed by different agencies. [Citations.] Moreover, the statute broadens the common law exception by eliminating the requirement that the injury result from subsequent *independent* acts of misconduct committed after the defendant becomes aware of the officer's presence. [Citation.] The expansive reach of the statute could seriously compromise public safety during joint operations if the threat of a lawsuit accompanied every failure to exercise due care in effecting an arrest, quelling a disturbance, extinguishing a fire, or handling any of the other functions public safety members routinely discharge. [Citation.] We decline to ascribe to the Legislature any intent to generate conflicting duties on the part of peace officers and firefighters or to undermine their primary commitment to the public's essential safety and protection for fear of personal liability for injury to fellow officers." (*Calatayud, supra,* 18 Cal.4th at pp. 1068-1069, original italics, fn. omitted.)

A second public policy consideration cited by the court was "the cost-spreading rationale . . . underlying the firefighter's rule." (*Calatayud, supra,*

at p. 1070.) The court stated: "In *Neighbarger, supra,* 8 Cal.4th at page 543, we explained that 'to permit firefighters to bring actions for injury caused by responding to a fire would involve the parties in costly litigation over rights of subrogation without substantially benefiting the firefighter, who is compensated either by the retirement system or the worker's compensation system. [Citation.] . . . [T]he public will pay the bill, whether the firefighter is compensated by public benefits derived from taxation, or from insurance proceeds that must be purchased. [Citation.]' Applying the firefighter's rule thus 'relieve[s] various public agencies of the burden of lawsuits over rights of subrogation that are pointless because the public fisc ultimately pays regardless of the outcome . . . .' [Citation.] It is highly unlikely the Legislature intended to encourage costly litigation, including the possibility of derivative actions, when the public has already financed statutory compensation of injured public safety members. [Citation.]" (*Calatayud, supra,* 18 Cal.4th at p. 1070.) The court noted: "In the final analysis, whether the injured officer is compensated through less expensive disability benefits or more expensive litigation, the payment comes from one or another of the taxpayers' pockets. When the injured officer is adequately recompensed through legislatively enhanced disability and other benefits, statutory interpretation that increases the cost of discharging public safety obligations seems intuitively contrary to any reasonable legislative intent." (*Id.* at p. 1071.)

A third public policy consideration cited by the court was efficient judicial administration. The court stated: "[E]xtending section 1714.9(a)(1) to fellow officers jointly discharging their duties would impair efficient judicial administration, another policy served by the firefighter's rule. [Citation.] The 'difficult problems' of determining causation [citation] are multiplied in cases turning on *the propriety of chosen police tactics or emergency procedures and in reality may simply involve a judgment call on the part of the officer who inadvertently inflicts injury.* [Citations.]" (*Calatayud, supra,* 18 Cal.4th at p. 1071, italics added.) The court further stated: "The taxpayers ultimately compensate for the injury regardless of the cause; a lengthy trial only determines from which account, inevitably at additional overall expenditure. In 'reversing the effect' of *Hubbard* [*v. Boelt, supra,* 28 Cal.3d 480], the Legislature intended to make third party tortfeasors bear the consequences of their misconduct, not burden the public with greater costs for police, fire, and medical emergency protection." (*Calatayud, supra,* at pp. 1071-1072.)

A fourth public policy consideration cited by the court was the exclusivity of California's worker's compensation system. The court stated: "Construing section 1714.9(a)(1) as extending to jointly engaged fellow officers would also create serious anomalies in the law because section 1714.9 preserves the

exclusivity of the Workers' Compensation Act. (Civ. Code, § 1714.9, subd. (d).) Thus, an injured officer would be allowed to sue when the negligent officer was employed by another agency but not by his own employer. We can discern no rational reason the Legislature would intend liability to depend solely on whether the plaintiff and defendant wore different badges and uniforms when the risk of injury is the same. Such a consequence is itself sufficiently absurd to defeat plaintiff's construction of the statute. [Citations.] Moreover, by any estimation, recompense for injuries caused by fellow officers was not 'the object to be achieved' [citation] nor as to them was the bar to liability imposed by the firefighter's rule 'the evil to be prevented by the legislation.' [Citation.] An injured officer would be in no different position regardless of which agency employed the negligent officer." (*Calatayud, supra*, 18 Cal.4th at p. 1072.)

*Calatayud* concluded that "any person," as used in section 1714.9(a)(1), does not include fellow public safety officers jointly engaged in a public safety operation and the statutory exception to the firefighter's rule is inapplicable to actions between public safety officers arising out of conduct during a joint public safety operation. Accordingly, the court reversed the judgment for the plaintiff. (*Calatayud, supra*, 18 Cal.4th at p. 1072.)

IV

*The Firefighter's Rule Applies in This Case to Bar*
*MacDonald's Action Against Defendants*

■ Defendants contend that *Calatayud* and the public policy considerations underlying the firefighter's rule compel application of the firefighter's rule in this case to bar MacDonald's action against them. MacDonald contends to the contrary and that *Calatayud* is limited to an interpretation of the section 1714.9(a)(1) statutory exception to the firefighter's rule, and that even if the statutory exception is inapplicable the common law exception to the firefighter's rule applies in this case and permits her action against Defendants.

A

The parties do not address, and the cases cited by the parties and the cases we have reviewed do not discuss, whether the firefighter's rule extends to publicly employed lifeguards. This issue appears to be one of first impression in California.

We discern no compelling reason to distinguish publicly employed lifeguards from publicly employed firefighters, police officers and emergency

medical personnel for purposes of application of the firefighter's rule. All respond to public emergencies or crises for which they have been employed and specially trained. In the typical application of the firefighter's rule, a public safety officer responds to an emergency or crisis situation to aid a member of the public. For example, a firefighter typically responds to a report of a fire that endangers lives and property of the public. The firefighter's rule precludes the firefighter from stating a cause of action against the fire victim for injuries the firefighter suffered because of the victim's negligence in causing the fire that resulted in the firefighter's presence at the scene.

A lifeguard typically acts in a similar fashion. The lifeguard responds to a report of water-related emergency or crisis that endangers lives of the public. The only discernible distinction between the functions of firefighters and lifeguards is that they generally respond to different hazards. Firefighters typically respond to fires; lifeguards typically respond to water-related emergencies. We believe this is a distinction without a difference. We further note that *Calatayud* often referred to "public safety members" when discussing the firefighter's rule. (*Calatayud, supra*, 18 Cal.4th at pp. 1060, fn. 2, 1068-1072.) Its use of that phrase supports a conclusion that the firefighter's rule applies to all public safety personnel and is not limited to firefighters, police officers and emergency medical personnel. Because publicly employed lifeguards undoubtedly are employed for public safety purposes, we conclude the firefighter's rule extends to publicly employed lifeguards.

B

*Calatayud* did not expressly decide whether the common law exception to the firefighter's rule for independent acts allows a personal injury action for injuries suffered by a safety officer in the course of a joint rescue operation. However, we conclude *Calatayud*'s rationale for holding the section 1714.9(a)(1) statutory exception inapplicable to actions between safety officers engaged in a joint operation applies equally to the common law independent acts exception.

*Calatayud* expressly limited its holding to interpretation of section 1714.9(a)(1). (*Calatayud, supra*, 18 Cal.4th at p. 1064, fn. 9.) However, in reaching its conclusion that the section 1714.9(a)(1) exception did not apply, *Calatayud* expressly discussed the public policy considerations that supported its implicit conclusion that the firefighter's rule should apply in cases of joint public safety operations. The primary public policy consideration is public safety. If the statutory exception to the firefighter's rule applied,

*Calatayud* noted there would be the potential for public safety officers to be unduly concerned with avoiding injury to fellow public safety officers during joint operations. (18 Cal.4th at pp. 1068-1069.) *Calatayud* stated that "[s]ound policy mandates that the discharge of these duties [to protect the public] takes precedence over avoiding injury to fellow officers, particularly when responding to a rapidly developing emergency or crisis." (*Id.* at p. 1069.) We conclude the same public policy consideration of public safety applies in this case to bar the application of the common law exception to the firefighter's rule. Publicly employed lifeguards are employed and specially trained to save lives of members of the public in water-related emergencies. If during a joint rescue operation a lifeguard were concerned that his or her actions might subject him or her to a lawsuit for injuries suffered by a lifeguard from another agency, the prevailing public policy of protecting the public safety could be impaired or compromised. Similarly, if on a report of a water-related emergency a lifeguard agency were concerned about its potential liability for injuries suffered by members of a fellow lifeguard agency or other public safety agency, the first agency might be less inclined to call for assistance from the fellow lifeguard agency or other public safety agency to conduct a joint water rescue operation. That disinclination could effectively impair or compromise public safety. The law should encourage public safety agencies to take all reasonable efforts, including conducting joint rescue operations, to promote public safety. The paramount policy of public safety supports a conclusion that the common law exception for independent acts should not apply to allow a lifeguard to sue a fellow lifeguard for injuries suffered during a joint water rescue operation.

A second public policy consideration cited by *Calatayud* is the cost-spreading policy of taxpayer-funded compensation and other benefits for injured public safety officers. The firefighter's rule relieves public agencies of the cost and burden of lawsuits over subrogation rights because the public fisc ultimately pays for injuries suffered by public safety officers. (*Calatayud, supra,* 18 Cal.4th at p. 1070.) This cost-spreading policy supports application of the firefighter's rule in a joint public safety operation. Application of the common law exception for independent acts for injuries suffered by public safety officers because of negligent acts of fellow public safety officers in the course of a joint rescue operation would only increase the cost ultimately borne by the public fisc. The cost-spreading policy supports a conclusion that the common law exception to the firefighter's rule should not apply to public lifeguards in joint water rescue operations.

A third public policy consideration cited by *Calatayud* is efficient judicial administration. The application of the statutory exception to the firefighter's rule would detract from the policy favoring efficient judicial administration

because it would allow time-consuming litigation on causation and the propriety of chosen public safety tactics or procedures that may simply involve judgment calls of public safety officers. (*Calatayud, supra,* 18 Cal.4th at p. 1071.) The policy of efficient judicial administration favors application of the firefighter's rule to cases that involve issues of causation and whether tactical decisions made by public safety officers in the course of a joint rescue operation were negligent.

A fourth public policy consideration cited by *Calatayud* is the exclusivity of the workers' compensation system. There is no rational reason to allow an injured public safety officer to sue a public safety officer employed by another agency but not one employed by the same agency. (*Calatayud, supra,* 18 Cal.4th at p. 1072.) Similarly, in this case application of the firefighter's rule avoids that anomaly and preserves the exclusivity of the workers' compensation system for injuries suffered in the course of a joint rescue operation and that under those circumstances the common law independent acts exception is inapplicable.

The reasons for not applying the statutory exception to the firefighter's rule are equally applicable for not applying the common law independent acts exception. We therefore conclude that the firefighter's rule applies to preclude an action between lifeguards for injuries suffered in the course of a joint rescue operation and in this case bars MacDonald's action against Defendants.

## C

MacDonald correctly argues that under the common law application of the firefighter's rule has been limited to the negligent acts that caused the presence of the public safety officers at the scene of injury and that negligent conduct thereafter is independent, permitting a personal injury action to be maintained. *Calatayud* quoted *Neighbarger*'s description of the exception: " 'The [firefighter's] rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer has arrived on the scene. [Citations.]' (*Neighbarger, supra,* 8 Cal.4th at p. 538.)" (*Calatayud, supra,* 18 Cal.4th at p. 1063.) *Lipson* stated: "The [firefighter's] rule has *only* been applied to prohibit a fireman from recovering for injuries caused by the very misconduct which created the risk which necessitated his presence." (*Lipson v. Superior Court, supra,* 31 Cal.3d at p. 369, original italics, fn. omitted.) However, we conclude that the common law exception should not apply in this case to the actions of a lifeguard in the course of conducting a joint

rescue operation. In this case the jet ski victim's actions necessitated Ferris's presence at the scene and the joint rescue operation by City lifeguards and Camp Pendleton lifeguards. The same public policy considerations underlying the application of the firefighter's rule to exonerate the victim should also apply to exonerate a fellow lifeguard whose presence and actions are in furtherance of the joint rescue operation for that victim. It would be anomalous to exonerate the victim but not the fellow lifeguard from a personal injury action by an injured lifeguard. The common law exception for independent acts should apply only to negligent and intentional acts of the victim and other third parties that are not in furtherance of a rescue operation. One court reached a similar conclusion: "Unless the [public safety officer] has come to a specific location to perform a specific immediate duty, and the defendant's unrelated negligent or intentional conduct increases the risks inherent in performing that duty [citations], this [independent acts] exception is . . . inapplicable." (*Seibert Security Services, Inc. v. Superior Court, supra*, 18 Cal.App.4th at p. 411.)

Furthermore, although *Calatayud* initially described the common law exception for independent acts using its limited, technical wording, the court later concluded that the section 1714.9(a)(1) exception "broadens the common law exception by eliminating the requirement that the injury result from subsequent *independent* acts of misconduct committed after the defendant becomes aware of the officer's presence." (*Calatayud, supra*, 18 Cal.4th at p. 1069, original italics.) By concluding that the section 1714.9(a)(1) exception was broader than the common law exception and then concluding that the section 1714.9(a)(1) exception did not apply to allow actions against fellow public safety officers for actions taken in the course of joint public safety operations, *Calatayud* implicitly held, or at least supports the conclusion, that if the section 1714.9(a)(1) statutory exception is inapplicable then the common law exception for independent acts is also inapplicable and does not allow a personal injury action by a public safety officer against a fellow public safety officer for actions taken in furtherance of a joint public safety operation.

### D

MacDonald cites *Rose v. City of Los Angeles* (1984) 159 Cal.App.3d 883 [206 Cal.Rptr. 49] in support of her assertion that the common law independent acts exception to the firefighter's rule applies in this case. In *Rose* a San Fernando police officer was shot by a Los Angeles police officer in the course of a joint law enforcement operation to serve search warrants on a suspected narcotics dealer. (*Id.* at pp. 885-886.) The injured officer filed a personal injury action against the City of Los Angeles and its officer, and the

trial court granted the defendants' summary judgment motion on the ground of the firefighter's rule. (*Id.* at p. 884.) However, the Court of Appeal concluded that the firefighter's rule did not apply because the actions by the Los Angeles police officer occurred after the San Fernando police officer was present at the scene and therefore the independent acts exception allowed the injured officer to sue the defendants. (*Id.* at pp. 886-889.) *Rose* noted that the reason for the injured officer's presence at the scene was the suspect's illegal conduct, not the other officer's act in directing him to the location near the suspect. (*Id.* at p. 889.) Accordingly, it reversed the summary judgment. (*Ibid.*)

*Rose* is factually similar to *Calatayud* and this case. All three cases involve joint operations during which a fellow public safety officer injures another public safety officer in the course of the joint operation. *Rose* appears closer to the facts of *Calatayud* because they both involved shots fired by a police officer during the course of a joint law enforcement operation. However, because of *Calatayud*'s express holding regarding the section 1714.9(a)(1) exception and its reliance on public policy considerations underlying the firefighter's rule, we conclude *Calatayud* implicitly overruled the holding in *Rose*. To the extent *Calatayud* did not overrule *Rose*, we decline to follow it in the circumstances of this case. Rather, we conclude *Calatayud*'s reasoning and the public policy considerations underlying the firefighter's rule compel the conclusion that the independent acts exception does not apply in the circumstances of this case.

## E

MacDonald asserts that *Calatayud* and the firefighter's rule should not be applied in this case because she did not receive the special benefits or compensation that firefighters and police officers receive when they are injured in the performance of their duties. She asserts she received only ordinary workers' compensation benefits. Although cases often cite the special benefits and compensation that firefighters and police officers receive as one reason underlying the firefighter's rule, no case has held that receipt of or eligibility for those benefits is a requirement for application of the firefighter's rule. On the contrary, cases have concluded receipt of special compensation or benefits is not a requirement for application of the rule. (*Hodges v. Yarian* (1997) 53 Cal.App.4th 973, 983 [62 Cal.Rptr.2d 130]; *Neighbarger, supra,* 8 Cal.4th at p. 544; *Baker v. Superior Court* (1982) 129 Cal.App.3d 710, 717-718 [181 Cal.Rptr. 311].) In *Baker,* volunteer firefighters who were paid a mere $5 per call for firefighting were barred from maintaining personal injury actions because the firefighter's rule applied. (*Baker, supra,* at pp. 717-718; *Neighbarger, supra,* at p. 544.) *Hodges*

noted that *Neighbarger* "rejected, in part, an argument that the firefighter's rule should not apply where the plaintiff . . . does not, in fact, receive the forms of compensation for which firefighters and peace officers are eligible." (*Hodges, supra,* at p. 983.) *Hodges* stated: "The *Neighbarger* court explained it was not the fact or amount of compensation that was determinative in *Baker* but, rather, 'the relationship between the public and the firefighters who serve it.' (*Neighbarger, supra,* 8 Cal.4th at p. 544; see also *Baker, supra,* 129 Cal.App.3d at pp. 717-718 [eligibility for special public benefits is not a prerequisite to application of the firefighter's rule].)" (*Hodges, supra,* at p. 983.) We adopt the reasoning of these cases and conclude the absence of special compensation or benefits to which firefighters and police officers are entitled does not preclude the application of the firefighter's rule. Whether the compensation and benefits received by publicly employed lifeguards are inadequate to compensate for the risks undertaken by them is an issue to be addressed by the legislative and executive branches of government. Inadequate compensation is *not* a sufficient reason to preclude application of the firefighter's rule to publicly employed lifeguards.

F

We conclude the firefighter's rule applies in this case to bar MacDonald's personal injury action against Defendants. The primary public policy underlying the firefighter's rule is public safety. Application of the firefighter's rule to preclude lawsuits by injured lifeguards against fellow lifeguards or other public safety officers for their actions taken in furtherance of a joint rescue or other public safety operation promotes public safety. Publicly employed lifeguards and other public safety officers are employed and specially trained to respond to public safety emergencies or crises. "As a matter of public policy and fairness, when firefighters and police officers [and lifeguards] are *injured by the very hazard they have been employed to confront,* they are generally precluded from recovering in tort damages from private persons. [Citations.] The firefighter's rule is based on the public policy that officers injured in the line of duty should be compensated through the public fisc rather than by individual tort recoveries. [Citation.]" (*Tilley v. Schulte, supra,* 70 Cal.App.4th at p. 83, italics added.) In this case, MacDonald, as a publicly employed lifeguard, voluntarily and knowingly undertook the hazards involved in the joint operation to rescue the victim in this case. Defendants owed MacDonald no duty of care to avoid injuring her in the course of the joint rescue operation. Therefore, Defendants have shown there is a complete defense to MacDonald's action and the trial court erred by denying their motion for summary judgment. (Code Civ. Proc., § 437c, subd. (o)(2).)

## Disposition

Let a peremptory writ of mandate issue directing the superior court to vacate its order denying petitioners' motion for summary judgment, enter a new order granting the motion and enter judgment for petitioners. Petitioners are entitled to costs.

Benke, Acting P. J., and Haller, J., concurred.