101 Cal.Rptr.2d 642 (2000)
84 Cal.App.4th 1448
RonaId FARNAM, Plaintiff and Appellant,
v.
STATE OF CALIFORNIA et al., Defendants and Respondents.
No. G021552.
Court of Appeal, Fourth District, Division Three.
November 28, 2000.
Review Denied February 28, 2001.[*]
*643 Gregory L. Bosse, Orange, for Plaintiff and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, Richard J. Rojo, Supervising Deputy Attorney General, Martin Ageson and Barbara A. Noble, Deputy *644 Attorneys General, for Defendants and Respondents.

OPINION
RYLAARSDAM, J.
A police dog handled by defendant, Joseph Morrison, a California Highway Patrol officer, bit plaintiff Ronald Farnam, a Los Alamitos police officer, at the scene of an arrest. Plaintiff sued Morrison and his agency, contending Morrison negligently handled the dog. We affirm the summary judgment in favor of defendants because primary assumption of risk (the "firefighter's rule") bars the claim.

FACTS
After participating with other law enforcement agencies in the vehicular pursuit of a suspected felon, Morrison learned by radio the suspect had been stopped. Morrison, accompanied by his canine companion Barry, went to the scene of the attempted arrest. Upon his arrival, he stepped out of his vehicle, holding Barry by a choke collar. Thereafter, he discovered plaintiff standing by the suspect's car with a gun pointed at the suspect.
Unfortunately, Barry mistook plaintiff for the villain, broke free of his handler, and bit plaintiff. Plaintiff then filed this action against Morrison and his employer. The trial court granted defendants' summary judgment motion, concluding that public safety officers were shielded from liability under Government Code section 821.6, which creates an immunity caused by "instituting or prosecuting any judicial or administrative proceeding."
After the parties had briefed the case, our Supreme Court decided Calatayud v. State of California (1998) 18 Cal.4th 1057, 77 Cal.Rptr.2d 202, 959 P.2d 360 (Calatayud) that addressed an almost identical scenario. We therefore directed the parties to file supplemental briefs analyzing the applicability of that case to the present one. We received and considered such briefs and conclude that under Calatayud, summary judgment was properly granted.

DISCUSSION

Primary Assumption of Risk
In Knight v. Jewett (1992) 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, the California Supreme Court held, "In cases involving `primary assumption of risk'where, by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injurythe doctrine continues to operate as a complete bar to the plaintiffs recovery." (Id. at pp. 314-315.) Knight involved application of the primary assumption of risk doctrine in the context of a sports-related injury (touch football).
In addition to employment of the doctrine in sports settings, primary assumption of risk has been applied to workrelated injuries, frequently under the label "firefighter's rule." This rule was first adopted in California in Giorgi v. Pacific Gas & Elec. Co. (1968) 266 Cal.App.2d 355, 72 Cal.Rptr. 119, but the seminal Supreme Court case to discuss this aspect of primary assumption of risk is Neighbarger v. Irwin Industries, Inc. (1994) 8 Cal.4th 532, 34 Cal.Rptr.2d 630, 882 P.2d 347 (Neighbarger).
In Neighbarger, safety employees at a refinery were injured in a fire and sued the maintenance company whose employees had allegedly started the fire. Relying on primary assumption of risk in the context of the firefighter's rule, the appellate court sustained summary judgment in favor of defendant. Although the Supreme Court found the rule did not apply to the facts of the case, it confirmed the existence of the firefighter's rule, limiting the public's duty of care to firefighters and police officers. Thus, "a member of the public who negligently starts a fire owes no duty of care to assure that the firefighter who is summoned to combat the fire is not injured thereby." (Neighbarger, supra, 8 Cal.4th at p. 538, 34 Cal.Rptr.2d 630, 882 P.2d 347.)
*645 The Neighbarger court relied on Knight v. Jewett, supra, 3 Cal.4th 296, 11 Cal. Rptr.2d 2, 834 P.2d 696, to reiterate that the firefighter's rule is but an application of the doctrine of primary assumption of risk. (Neighbarger, supra, 8 Cal.4th at p. 538, 34 Cal.Rptr.2d 630, 882 P.2d 347.) It noted that the circumstances under which the rule should be applied in a work-related setting are the same as in the sports setting, where, "because of the nature of the activity involved and the parties' relationship to the activity, the defendant owed the plaintiff no duty of care. [Citation.]" (Id. at p. 538, 34 Cal.Rptr.2d 630, 882 P.2d 347.)
The appellation "firefighter's rule" can be misleading because its application is not limited to situations involving fires or firefighting. (See, e.g., Hubbard v. Boelt (1980) 28 Cal.3d 480, 169 Cal.Rptr. 706, 620 P.2d 156 [police officer injured while attempting to arrest speeder barred from recovery by firefighter's rule]; Herrle v. Estate of Marshall (1996) 45 Cal.App.4th 1761, 1765, 53 Cal.Rptr.2d 713 [nurse's aide employed specifically to care for violent patient who attacked and injured her, could not recover because patient owed no duty of care].) Additionally, what has been labeled the "veterinarian's rule" is just another application of the firefighter's rule in a different context. (Nelson v. Hall (1985) 165 Cal.App.3d 709, 714, 211 Cal.Rptr. 668 [veterinarian's assistant bitten by dog being treated not entitled to recover damages due to acceptance of employment involving known risk].)

Test for Applying the Firefighter's Rule
The language in some cases, including Neighbarger, appears to restrict the firefighter's rule to conduct that necessitated summoning an officer. (Neighbarger, supra, 8 Cal.4th at p. 538, 34 Cal. Rptr.2d 630, 882 P.2d 347.) But a review of the applications of the rule to specific facts in other cases demonstrates it is not so limited. Rather, in the employment context, the rule has been applied to conduct in addition to that "which necessitates the summoning of the ... officer." (Ibid.) For example, the veterinarian cases: Nelson v. Hall, supra, 165 Cal.App.3d at page 714, 211 Cal.Rptr. 668, Cohen v. McIntyre (1993) 16 Cal.App.4th 650, 20 Cal.Rptr.2d 143, and Willenberg v. Superior Court (1986) 185 Cal.App.3d 185, 229 Cal.Rptr. 625. In none of these cases did defendant's conduct necessitate summoning plaintiff. Instead, "the defendant [was] impliedly relieved of any duty of care by the plaintiffs acceptance of employment involving a known risk or danger. [Citations.]" (Nelson v. Hall, supra, 165 Cal. App.3d at p. 714, 211 Cal.Rptr. 668.)
Rather than restricting our inquiry to whether plaintiff was summoned due to defendant's conduct, we must determine whether public policy considerations justify "exonerating defendants from their usual duty of care...." (Neighbarger, supra, 8 Cal.4th at p. 539, 34 Cal.Rptr.2d 630, 882 P.2d 347.) The policies enunciated in Neighbarger, Calatayud, and, most recently, City of Oceanside v. Superior Court (2000) 81 Cal.App.4th 269, 96 Cal.Rptr.2d 621 (City of Oceanside), support application of primary assumption of risk here.

The Calatayud Case
In Calatayud, supra, 18 Cal.4th 1057, 77 Cal.Rptr.2d 202, 959 P.2d 360, a highway patrol officer, who was attempting to subdue a suspect, accidentally shot a city police officer who came to his assistance. The underlying facts are similar to ours; both incidents occurred in the course of an arrest, involved law enforcement officers from different agencies, and in neither case did defendant's conduct require summoning plaintiff. In Calatayud, the victim came upon the scene intending to assist the arresting officers; here an officer who was about to come to the assistance of the arresting officer injured the latter.
The Calatayud court did not directly analyze the applicability of the firefighter's *646 rule; rather, it focused on whether a statutory exception to the rule (Civ.Code, § 1714.9, subd. (a)(1)) applied. But the opinion implicitly supports the view that under its own facts and those in this case, the rule applies. At the outset, the opinion notes, "The question we must resolve is whether the firefighter's rule or the statutory exception should govern the negligent officer's, and his employer's, liability." (Calatayud, supra, 18 Cal.4th at p. 1060, 77 Cal.Rptr.2d 202, 959 P.2d 360.) In the face of this dichotomy, the court's conclusion that the statutory exception did not apply (id. at p. 1072, 77 Cal.Rptr.2d 202, 959 P.2d 360) necessarily leads to the conclusion that the firefighter's rule governed. (Id. at p. 1060, 77 Cal.Rptr.2d 202, 959 P.2d 360.)
The policy considerations discussed in Calatayud also compel the conclusion that the rule controls here. The opinion explains the firefighter's rule and its rationale. (Calatayud supra, 18 Cal.4th at pp. 1061-1063, 77 Cal.Rptr.2d 202, 959 P.2d 360.) The court first gives a brief history of the development of the rule (id. at p. 1061, 77 Cal.Rptr.2d 202, 959 P.2d 360), then explains that "[t]he undergirding legal principle of the rule is assumption of the risk," and that "[t]he rule is equally grounded in considerations of public policy." (Id. at p. 1061, 77 Cal.Rptr.2d 202, 959 P.2d 360.) Next, the court proceeds to analyze that policy. (Id. at pp. 1062-1063, 1068-1072, 77 Cal.Rptr.2d 202, 959 P.2d 360.)
It is not necessary to repeat the court's analysis in detail. Suffice it to summarize it as follows: Public safety employees are employed to handle the very hazard that causes the injury, and they receive special public compensation for being exposed to the dangers caused by the defendants' negligence. The firefighter's rule is founded on a public policy decision to compensate the officers collectively through tax-generated revenue and not through individual negligence actions which would overburden the courts. (Calatayud, supra, 18 Cal.4th at pp. 1062-1063, 77 Cal.Rptr.2d 202, 959 P.2d 360.)
Calatayud also explains the public policy considerations supporting its decision that the statutory exception of Civil Code section 1714.9, subdivision (a)(1) should not be applied. (Calatayud, supra, 18 Cal.4th at pp. 1068-1072, 77 Cal.Rptr.2d 202, 959 P.2d 360.) These policy considerations apply equally to a determination of whether primary assumption of risk applies in the first instance. Again, we need not repeat the Calatayud court's detailed analysis but will merely summarize it: (1) A public safety officer's primary responsibility is to protect the public; to impose a duty of care on one officer to another creates a substantial potential for conflicting duties, especially given the large number of possible defendants and the scope of liability; (2) joint operations involving public safety officers from different agencies are to be encouraged, and a failure to apply the firefighter's rule "could seriously compromise public safety during joint operations" (id. at p. 1069, 77 Cal.Rptr.2d 202, 959 P.2d 360); (3) failure to extend the rule to claims between officers from different agencies would fly in the face of a critical public policy underlying the firefighter's rule, to spread the cost, and would cause an "adverse effect on the fisc" and "impair efficient judicial administration" (id. at p. 1070, 77 Cal.Rptr.2d 202, 959 P.2d 360; see, Comment, The Fireman's Rule: Defining Its Scope Using the Cost Spreading Rationale (1983) 71 Cal.L.Rev. 218, 235-236); (4) to permit such claims would require resolution of "the propriety of chosen police tactics or emergency procedures and in reality may simply involve a judgment call on the part of the officer who inadvertently inflicts injury"; and, (5) there is "no rational reason [for] liability to depend solely on whether the plaintiff and defendant wore different badges and uniforms when the risk of injury is the same." (Id. at pp. 1072, 77 Cal.Rptr.2d 202, 959 P.2d 360.)
*647 All of the policy reasons advanced to support the court's refusal to apply the statutory exception to the firefighter's rule apply support with equal force to a determination that the rule applies in the first instance.

The City of Oceanside Case
In City of Oceanside, supra, 81 Cal. App.4th 269, 96 Cal.Rptr.2d 621, our colleagues in Division 1 of this district viewed the limitation that "[t]he [firefighter's] rule does not apply to ... independent acts of misconduct that are committed after the [public safety officer] has arrived on the scene" as a common law exception to the rule. (Id. at p. 275, 96 Cal.Rptr.2d 621.) Whether we accept this characterization or not, the issue remains the same: When one public safety officer injures another during their joint response to an emergency, may the former be liable to the latter? City of Oceanside supports the conclusion that the question must be answered in the negative. This is true even where the conduct of the defendant-officer did not occur until the plaintiff-officer arrived at the scene of the emergency.
In City of Oceanside, lifeguards employed by different agencies were involved in a rescue. One of them, apparently in a position of authority, directed another, employed by a second agency, to move into a dangerous position which subsequently resulted in her injuries. The injured lifeguard sued the one who had given her directions, arguing the firefighter's rule did not apply because the alleged misconduct did not occur until after she had arrived on the scene. The court disagreed and applied primary assumption of risk in spite of this fact. In doing so, the court concluded that "Calatayud's rationale for holding the [Civil Code] section 1714.9(a)(1) statutory exception inapplicable to actions between safety officers engaged in a joint operation applies equally to the common law independent acts exception." (City of Oceanside, supra, 81 Cal.App.4th at p. 280, 96 Cal.Rptr.2d 621.)
As did the Calatayud court, before reaching this conclusion the City of Oceanside court exhaustively considered the public policy considerations underlying the firefighter's rule and the need to extend it to situations such as those we consider here. We agree with this analysis and need not repeat those considerations.

Application of Neighbarger to the Facts of this Case
This brings us back to the basic tests of Neighbarger: "[T]he doctrine of assumption of risk properly bars a plaintiffs claim only when it can be established that, because of the nature of the activity involved and the parties' relationship to the activity, the defendant owed the plaintiff no duty of care" (Neighbarger, supra, 8 Cal.4th at p. 538, 34 Cal.Rptr.2d 630, 882 P.2d 347), and "public policy precludes recovery for those who are injured by the very hazard they have been employed to confront." (Id. at p. 539, 34 Cal.Rptr.2d 630, 882 P.2d 347.) Here, there was an attempt to apprehend a felon, an activity that poses danger not only to the officer but also to the public. Plaintiff and defendant shared the objective to effect an arrest under these dangerous conditions. The duty of care the officers owed to the public under these circumstances precludes their owing a duty of care to each other. The hazard posed by the police dog is inherent in the activity the public hired plaintiff to perform. Thus, primary assumption of risk bars the claim.

Immunity Under Government Code Section 821.6?
The trial court granted summary judgment based on a determination that defendants were immune from liability under Government Code section 821.6, which covers injuries caused by "instituting or prosecuting any judicial or administrative proceeding." Although we are inclined to agree with plaintiff that this statute does not apply to these facts, we need not decide the issue in light of our affirmance *648 under the doctrine of primary assumption of risk.

DISPOSITION
The judgment is affirmed. The parties shall bear their own respective costs.
SILLS, P.J., concurs.
BEDSWORTH, J., dissenting:

I
I wholeheartedly support the idea of immunizing public safety officers from liability for injuries suffered by an officer from a different agency during a joint response. I like the result my colleagues have crafted, and would join them if I could discern some basis for their conclusion other than judicial fiat. However, I cannot find such a rule in Calatayud v. State of California (1998) 18 Cal.4th 1057, 77 Cal.Rptr.2d 202, 959 P.2d 360, and I believe creation of such an immunity is properly the role of the Legislature, not the Court of Appeal.
In Calatayud, the Supreme Court did not analyze the firefighter's rule itself; instead it confined its opinion to determining whether Civil Code section 1714.9, a particular statutorily created exception to the rule, was applicable to public safety officers. The court's holding was merely that the phrase "any person" in section 1714.9 was not intended to include other police officers, and thus the exception to the firefighter's rule created by statute did not apply. Nothing in Calatayud changed the basic parameters of the firefighter's rule.
In fact, Calatayud cites with approval the Supreme Court's prior opinion in Neighbarger v. Irwin Industries, Inc. (1994) 8 Cal.4th 532, 538, 34 Cal.Rptr.2d 630, 882 P.2d 347, in which the court notes that the protection afforded by the firefighter's rule is fairly narrow: "The rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer has arrived on the scene." (See Calatayud v. State of California, supra, 18 Cal.4th at p. 1063, 77 Cal.Rptr.2d 202, 959 P.2d 360.) I'm unable to discern the nuance my colleagues find in that language. It seems clear to me and seems clearly applicable to our case.
Here, Morrison's inadvertent release of his dog, which occurred long after Farnam was on the scene, cannot be construed as "conduct ... which necessitated the summoning of [Farnam]." Consequently, Morrison's conduct simply cannot be protected by the firefighter's rule. Because the conduct is not governed by the rule in the first instance, it is immaterial whether, under Calatayud's analysis, a statutory exception to the rule should apply.
Given that the firefighter's rule does not apply in this case, the issue boils down to whether this court should declare an immunity in favor of public safety officer which did not heretofore exist. I think not. It is the role of the Legislature to make the laws, and the role of the courts to interpret them. I hope the Legislature will act; unlike my colleagues, I am unwilling to do it myself.

II
Because I do not believe this case can be resolved at this point based upon the firefighter's rule, I must address the issue actually raised by the defendants, and upon which summary judgment was granted, i.e., the notion that Government Code section 821.6. (section 821.6) provides immunity to public employees for virtually all conduct committed in the course of investigating crime or apprehending criminals.
Section 821.6, enacted as part of the California Tort Claims Act, provides "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Farnam contends section 821.6 *649 applies only to malicious prosecution, relying primarily upon Sullivan v. County of Los Angeles (1974) 12 Cal.3d 710, 719-720, 117 Cal.Rptr. 241, 527 P.2d 865.
In Sullivan, the Supreme Court evaluated the scope of section 821.6 and rejected the suggestion it provided immunity for falsely imprisoning someone past the appropriate term. Although the Sullivan Court gave two reasons for its decision, it stated the "more important" reason was that "the history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability only for malicious prosecution.... The Senate Committee comment to the section states that `The California courts have repeatedly held ... public employees immune from liability for this sort of conduct. [Citing several California cases which deal with public employee immunity from malicious prosecution suits: White v. Towers (1951) 37 Cal.2d 727 [235 P.2d 209]; Coverstone v. Davies (1952) 38 Cal.2d 315 [239 P.2d 876]; Hardy v. Vial (1957) 48 Cal.2d 577 [311 P.2d 494] and one case dealing with public entity immunity for malicious prosecution: Dawson v. Martin (1957) 150 Cal.App.2d 379 [309 P.2d 915].] This section continues the existing immunity of public employees; and, because no statute imposes liability on public entities for malicious prosecution, public entities likewise are immune from liability.'" (Sullivan v. County of Los Angeles, supra, 12 Cal.3d at pp. 719-720, 117 Cal. Rptr. 241, 527 P.2d 865, second italics added; bracketed material added by Sullivan.)
Despite the Supreme Court's suggestion that Government Code section 821.6 provides immunity only for malicious prosecution, several Courts of Appeal have concluded its scope is not strictly limited to that tort. Defendants rely upon those cases to argue that section 821.6 immunizes any act committed by an officer in the course of investigating crime or pursuing suspected criminals. I cannot agree.
Although there is some overlap, the cases which extend section 821.6 beyond traditional malicious prosecution claims can be generally divided into two categories. First, some cases have held section 821.6 provides immunity not only for the judicial or administrative proceeding itself, but also includes any "essential step to the institution of the [proceeding]...." (Kemmerer v. County of Fresno (1988) 200 Cal. App.3d 1426, 1436-1437, 246 Cal.Rptr. 609 [investigation and preliminary notice of proceedings before civil service commission were within the scope of "administrative proceeding" as used in section 821.6]; see also Kayfetz v. State of California (1984) 156 Cal.App.3d 491, 494, 203 Cal. Rptr. 33 [publication of disciplinary action against doctor was part of disciplinary process]; Jenkins v. County of Orange (1989) 212 Cal.App.3d 278, 283-284, 260 Cal.Rptr. 645 [inadequate investigation of child abuse was part of dependency proceeding]; Baughman v. State of California (1995) 38 Cal.App.4th 182, 45 Cal.Rptr.2d 82 [execution of search warrant was part of criminal proceeding].)
These cases do not really challenge the basic concept that section 821.6 addresses malicious prosecution; instead they merely clarify that a judicial or administrative proceeding encompasses much more than the act of filing charges. None of the cases, however, goes so far as to hold that efforts to apprehend a suspect fall within the malicious prosecution definition of "initiating a judicial proceeding."
The second line of cases does, however, conclude that section 821.6 immunity can apply in situations where a malicious prosecution action would not technically lie. In Johnson v. City of Pacifica (1970) 4 Cal. App.3d 82, 84 Cal.Rptr. 246, the plaintiff alleged the officers had negligently, but not maliciously, instituted proceedings. The court held the concluding language of section 821.6, which specifies the immunity applies "even if he acts maliciously and without probable cause," implied the immunity also attached if the acts were not malicious. (Johnson at p. 87, 84 Cal.Rptr. 246.) In Amylou R. v. County of Riverside *650 (1994) 28 Cal.App.4th 1205, 1210, 34 Cal.Rptr.2d 319, the court evaluated the policy underlying section 821.6, before concluding immunity applied even to damage claims made by one who was not the target of the judicial or administrative proceeding (and who would thus not have standing to bring a malicious prosecution claim). The court noted section 821.6 was prompted by the need to give officers the "`"free[dom] to act in the exercise of honest judgment uninfluenced by fear of consequences personal to themselves,"'" (Amylou R. v. County of Riverside, supra, 28 Cal.App.4th at p. 1213, 34 Cal.Rptr.2d 319, citation omitted) and reasoned that the danger of such influence was the same whether or not the person injured was the target of the proceeding.
The concept that section 821.6 immunity is intended to protect the ability of law enforcement officers to make judgment calls runs through many of the cases, and was strongly emphasized by the Supreme Court in Sullivan. On this point, the Supreme Court quotes from an analysis by Professor Van Alstyne, whom it characterizes as "the principal architect of the California Tort Claims Act." In that passage, Professor Van Alstyne explains that section 821.6 was intended to "`codif[y] the recognized common law immunity of prosecutors and other law enforcement officers from malicious prosecution actions, in order to prevent interference with their discretionary and quasi-judicial responsibility for institution and prosecution of enforcement proceedings.'" (Sullivan v. County of Los Angeles, supra, 12 Cal.3d at pp. 721-722, 117 Cal.Rptr. 241, 527 P.2d 865, quoting Van Alstyne, Cal. Government Tort Liability Supplement (Cont.Ed.Bar 1969) § 5.63, pp. 24-25, italics added.) Van Alstyne makes clear that section 821.6 was not designed to immunize inadvertent conduct such as failing to release a prisoner, and specifically distinguishes such conduct from the type "`of discretionary determination ... which the immunity was designed to safeguard.'" (Ibid.)
Indeed, in each of the cases discussed above, the acts which allegedly caused injury were indisputably intentional acts of judgment. In some cases, the acts were allegedly prompted by a malicious intent to injure (e.g., in Amylou R. v. County of Riverside, supra, 28 Cal.App.4th 1205, 34 Cal.Rptr.2d 319, the defendants were alleged to have made intimidating and defamatory statements about plaintiff, a rape victim, because she was not sufficiently cooperative), while in others, the acts were allegedly the product of negligence (e.g., in Jenkins v. County of Orange, supra, 212 Cal.App.3d 278, 260 Cal.Rptr. 645, the decision to institute dependency proceedings was allegedly the product of an inadequate investigation). Baughman v. State of California, supra, 38 Cal.App.4th 182, 45 Cal. Rptr.2d 82, is the only case in which the facts do not make clear whether the act complained of was intentional, and it is illuminating.
In Baughman, the defendants destroyed computer disks belonging to plaintiff in the course of executing a search warrant. Plaintiff sued for conversion, thereby alleging the destruction was intentional. At the conclusion of plaintiffs case-in-chief, the trial court expressed the belief the conversion claim was immunized by section 821.6, and plaintiff consequently dismissed the conversion claim, but was given leave to amend his complaint to conform to proof of negligence (i.e., unintentional destruction). Thus, the trial court in Baughman drew a clear distinction between an intentional destruction claim, which it felt would be immunized, and an unintentional destruction claim, which could proceed to the jury. Unfortunately, the Court of Appeal itself did not get an opportunity to evaluate how section 821.6 applied to the unintentional destruction, because the jury returned a verdict for defendants on that claim. The appeal concluded only that section 821.6 should be applied to the conversion (intentional destruction) claim. (Baughman v. State of California, supra, 38 Cal.App.4th at pp. 190-193, 45 Cal. *651 Rptr.2d 82.) Nonetheless, in my view, the trial court drew the appropriate distinction.
The purpose of section 821.6, to protect the ability of government employees to act upon their judgments without fear of personal consequences, applies only where the employee is making a conscious decision to act (or not act) that might be affected by extrinsic personal considerations. But in the instant case, unlike the cases discussed above, Farnam's injury was not the product of an intentional act by Morrison. Instead, by all accounts, Morrison had no intention of releasing Barry; it was simply a mistake. And such mistakes, devoid of any thought process at all, are neither affected by the prospect of immunity nor should they be promoted by it. Consequently, the immunity of section 821.6 should not be applied where, as here, the act which caused the damage was not intentional.
My conclusion that Government Code section 821.6 is not intended to cover Farnam's injury is also bolstered by Civil Code section 3342, which provides strict liability for dog bites. Although as defendants point out that Civil Code section 3342 exempts dog bites by police dogs in the course of their work (Civ.Code, § 3342, subd. (b)), they neglect to mention the exemption applies only if the person bitten is "a party to [or] participant in, [or] suspected to be a party to or a participant in, the act or acts that prompted the use of the dog...." (Civ.Code, § 3342, subd. (c).)[1] By that latter provision, the Legislature has made clear it intends police agencies to escape liability for their dogs' bites only when the person bitten is the suspected wrongdoer.
In light of the Legislature's very specific provision of strict liability for dog bites (including police dogs who bite someone other than the suspect), I can hardly conclude they intended to immunize that same damage through a broad interpretation of section 821.6. (See San Francisco Taxpayers Assn. v. Board of Supervisors (1992) 2 Cal.4th 571, 577, 7 Cal.Rptr.2d 245, 828 P.2d 147, quoting Rose v. State of California (1942) 19 Cal.2d 713, 723-724, 123 P.2d 505 ["It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates."].)
I would reverse the summary judgment, remanding the case for further proceedings, and the legal lacuna which concerns my brethren for legislation.
NOTES
[*] Mosk, J., dissented.
[1] Farnam relied upon Civil Code section 3342 in his opposition to summary judgment. Morrison argues Farnam could not properly do so because he did not specifically plead it in his complaint (see Brenneman v. State of California (1989) 208 Cal.App.3d 812, 256 Cal.Rptr. 363) and did not seek leave to amend. This seems to me the legal equivalent of suggesting Farnam failed to say "Mother may I," since Morrison does not contend he was prejudiced by the omission. In any event, Farnam's failure to plead the statute as a separate basis of liability does not prevent me from looking to it for guidance in my legal analysis of Government Code section 821.6.